Walker *vs.* Walker.

STEPHEN B. WALKER, plaintiff in error, *vs.* ELIHU H. WALKER, defendent in error.

A testator made his will and bequeathed one-sixth part of his estate to the children of his son Elihu, and directed that his son should have the right to become the guardian of his children under age, upon his giving bond and good security for the faithful payment of the principal when his children should become of age, and pay no interest on their respective estates—and Elihu became the guardian of his son. Stephen V. gave the bond and received his share of the testator's estate under the will, in the year 1854 or 1855, and at first mingled the money so received for his son with his own money, and loaned it out at interest with his own, making no distinction between his own and that money; loaned large amounts of money to Cochran & Dumas, who were then reputed to be solvent, and never separated his son's money from his own until 1862, wlen renewing Cochran & Dumas' notes, he took the notes payable to himself as guardian of his son, and a mortgage on property to secure the payment thereof, which mortgage security became valueless, there being a prior judgment lien on the mortgaged property, and Cochran & Dumas became insolvent. On the trial of an action brought by the son, Stephen V., against his father as guardian, to recover the amount due him under the will of his grandfather, the Court charged the jury, that "if the defendant, as guardian for the plaintiff, loaned his money to persons good and solvent at the time of the loan, and used ordinary diligence to secure the debt, and such diligence as he used in his own business, and the debt was lost, he should not be held responsible for the loss, as he had a discretion to loan the money or not, as he might see proper:"

*Held,* That the charge of the Court as applicable to guardians and trustees, under the general law of this State, who are required to pay interest on the funds in their hands, was in substance a legal charge; yet, under the facts presented by the record in this case, the charge of the Court was error, inasmuch as it was clearly the intention of the testator, by his will, to secure the payment of *the principal sum* bequeathed to his grand-children on their becoming of age, in any event, and the guardian having received the money under the terms and provisions of the will, he is bound to conform thereto. He was not bound to pay any interest, and if he made any interest or profit from the use of the money, it was for his own benefit—the profits arising therefrom were exclusively his own, and the risk was his own, if he lost the principal in loaning it to make interest for himself. .

Guardians. Interest. Before Judge GREEN. Munroe Superior Court. August Term, 1870.

Thomas Walker died testate. His will gave certain money to his grand-children, and directed that his "own children have the right to become guardians for their own children that are not of age, and pay no interest on their respective estates, by giving good bond and security for the faithful payment of the principal, as their heirs become of age, and in case my children fail to comply with this requirement, guardians must be appointed as the law provides in other cases in this State." Elihu H. Walker was one of Thomas Walker's "own children," had minor sons, gave bond and became their testamentary guardian according to said will.

Stephen V. Walker, son of Elihu H. Walker, in July, 1869, sued him as his guardian for $1,341 00, due him by his father, as such guardian. The defendant pleaded that the plaintiff was *non compos mentis*, had a trustee, and could not recover in his own right; that he loaned this money to solvent parties, who became insolvent, and had fully settled the matter with the plaintiff's trustee, by a judgment of the Court of Ordinary. On the trial, plaintiff's counsel read in evidence said will, the order appointing Elihu H. as his guardian, and a letter from Elihu H. to plaintiff, dated February 12th, 1869, in which defendant stated that plaintiff would be of age on the 17th of February, 1869; that the amount received by him, as guardian for plaintiff, was $1,341 00, for which he held Dumas' note and mortgage, but that they were worthless. Averring that that would defeat plaintiff's claim on him, in law, he added that he had applied to the Judge of the Superior Court and obtained an order to pay over to plaintiff's agent or trustee whatever the Court at March Term, 1869, should decree to be due him.

The defendant then testified, as follows: Plaintiff was born diseased, and is of weak mind. Believing him to be incapable of managing his own business upon arriving at age, when he was approaching majority, he petitioned the Judge of this Court to appoint a trustee for him to make a

Walker *vs.* Walker.

settlement with witness as guardian of plaintiff, and take charge of what property or money might be coming to him, so as to prevent him from wasting it. Witness received the money of his children from his father's estate, in 1854 or 1855, and was two or three years getting all the money in, and at first mingled it with his own money, and loaned it out at interest with his own, making no distinction between his own and that money. He loaned large amounts to Allen Cochran and James H. Dumas, and his son, W. J. Dumas, who were then reputed to be solvent—Cochran owning over one hundred slaves and Dumas over thirty; and never separated the money of his ward from his own until 1862, when, renewing the notes, he took the notes payable to himself, as guardian, from Dumas and with Cochran as security. The notes were renewed by them twice. Cochran died, and his estate being insolvent, he then took notes from Dumas payable to himself as guardian of his son, Stephen V. Walker, and A. H. C. Walker; on the last renewal of said notes in 1865, he took a mortgage from said Dumas, on lots in the town of Forsyth, to secure the payment of said notes. The property mortgaged to witness to secure said debts, he found afterwards, subject to a judgment in favor of John Neal, of older date than witness' mortgage. Witness employed counsel to have the judgment of Neal set aside, to get it out of the way of his mortgage, but failed. The property mortgaged has all, since the death of Dumas, been set apart to his widow for twelve months' support and dower, and the debt on Dumas is thus lost, as his estate is insolvent. Witness also lost largely in debts on Cochran and Dumas—as much as $10,000 00. His mortgage on Dumas' property has not been foreclosed, and nothing was done to secure it but a motion made to set aside Neal's judgment, which failed.

Witness thinks that on the day the Ordinary made the settlement, Stephen V. Walker was in town, but was not present at the settlement.

Witness testified he could not distinguish the money of

his children from his own, as it was all together and loaned together, without separating one from the other, until he separated it in taking the notes from Dumas and Cochran, in 1862; that he gave his son, A. H. C. Walker, the amount due him, and more than the amount due him, upon his arriving at age, though he did not consider that he owed him anything.

Defendant's counsel read in evidence a record showing the following facts: In January, 1869, defendant presented to the Judge of the Superior Court a petition, in which he explained that he was such guardian of plaintiff, then about to be of full age; that plaintiff "is wholly incapable, from his habits of life and want of mental capacity, to take charge of his property," and prayed that, "for the protection of his son's property, his (defendant's) brother, William Walker, be appointed his trustee, with power to make a final settlement in the Court of Ordinary, with petitioner, as to whatever amount may be found due him." To this was attached a copy of said will, a consent by William to become such trustee, an affidavit by Elihu H., William and G. W. Walker, and a physician, that the facts in the petition were true, and an order passed by Judge Green, on the 29th of January, 1869, at Chambers, granting the petition and giving the power as prayed for, and a bond by William Walker, as trustee, with defendant as his security, for the faithful performance of said trust by said William.

They also read another record, showing the following:

Defendant petitioned the Ordinary for citation, requiring William Walker, as trustee, to appear and settle with said defendant as to said trust; on 1st of March, 1869, the Ordinary ordered William Walker to appear at his next Court to make said settlement, and plaintiff to appear and shew cause why such settlement should not be made, upon which William Walker and the attorney for plaintiff acknowledged service; at July Term, 1869, the Ordinary adjudged that the amount due was $1,341 91, that this was loaned to Du-

mas and secured by mortgage, and ordered the note and mortgage of Dumas turned over by defendant to William Walker, as trustee, and that defendant " be, and is hereby discharged from all further liability as guardian."

Defendant also read in evidence a mortgage made the 9th of September, 1865, by one Dumas, to defendant as guardian of plaintiff and another son, upon certain lands therein described, and to secure two notes made on that day by Dumas, payable to defendant as guardian for the two sons, one for $1,563 37, due the 1st of January, 1857, and the other for $1,150 00, due the 1st of January, 1869. In rebuttal, plaintiff's said attorney testified that he did not recognize the authority of William Walker, as trustee, to make such settlement, that the citation was for a settlement of accounts of defendant as such guardian with said William as such trustee; that he acknowledged service as aforesaid, but had no notice that a settlement was to be made at July Term until told, while the Court was sitting, that the settlement was then about to be made, and that he had no recollection of seeing plaintiff in town that day.

The parties having closed, the Judge charged the jury that, if they believed from the evidence that the citation for a settlement in the Court of Ordinary was for a settlement of the accounts of the guardian with William Walker, trustee for S. V. Walker, and not with S. V. Walker himself, in his own right, then the judgment of the Ordinary, in the final settlement was not binding on the plaintiff, and he was not concluded by it; and the appointment of William Walker, as trustee for S. V. Walker, was irregular and illegal and null and void; and William Walker had no authority from that appointment to act as trustee for S. V. Walker, and represent him in a settlement with his guardian; and in that case they should find for the plaintiff; but if they believed from the evidence that S. V. Walker was cited, in his own right, after arriving at age, to appear before the Ordinary for a settlement with his guardian, and failed, or refused to appear,

Walker *vs*. Walker.

and the Ordinary proceeded to make a settlement between him and his guardian, and made an adjudication between them which was not appealed from, that judgment; in such a case, is binding and conclusive upon the plaintiff, unless there be fraud or mistake in the judgment; but the judgment of the Ordinary must follow the pleadings, and must be between the parties cited to be binding; if it goes beyond the pleadings and makes an adjudication between parties not cited to appear for a settlement, in such case the judgment is a nullity and not binding.

The Court charged further, that if the defendant, as guardian for the plaintiff, loaned his money to persons good and solvent at the time of the loan, and used ordinary diligence to secure the debt, and such diligence as he used in his own business, and the debt was lost, he should not be held responsible for the loss, as he had a discretion to loan the money, or not, as he might see proper; but if they believed from the evidence that the defendant, when he at first received the money of the plaintiff, mingled it with his own, and continued so to manage it for a considerable time, and afterwards finding that he was about to lose money, then separated it and put it upon his ward, taking notes payable to himself as guardian, and the money was lost in such debts, the defendant is responsible to the plaintiff, and the jury should find for him. The jury returned a verdict in favor of the defendant. Whereupon plaintiff's attorneys moved the Court for a new trial upon the following grounds, viz: The verdict is contrary to the law and charge of the Court, to the principles of equity and the evidence, and because the latter paragraph of the charge is erroneous. The new trial was refused, and error is assigned on said grounds.

CABANISS & PEEPLES, for plaintiff in error, said William Walker's appointment was void: Code, secs. 1843 to 1855. As to liability of guardians: Bingham on Infancy, 169; Note, 171; 13 Pick, R., 211, 212; 1st Atk. R., 489; Tyler on In. 262; 8th Gill and J. 218.

A. D. HAMMOND by A. M. SPEER, for defendant.

WARNER, J.

The charge of the Court to the jury as applicable to guardians and trustees, under the general law of this State, who are required to pay interest on the funds in their hands, was in substance a legal charge; but as applicable to the statement of facts contained in the record of this case, it was error, inasmuch as it was clearly the intention of the testator by his will to secure the payment of the principal sum bequeathed to his grand-children on their becoming of age, in any event.

Let the judgment of the Court below be reversed.