> Decree affirmed, and the appeal dismissed at the costs of the appellants.

---

# APPEAL OF R. A. BAER, EXR.

## [ESTATE OF J. M. HARMAN, DECEASED.]

### FROM THE DECREE OF THE ORPHANS' COURT OF LANCASTER COUNTY.

Argued May 21, 1889—Decided June 28, 1889.

[To be reported.]

1. If an administrator or other trustee invest the trust funds with a private banker, without an order of court but in good faith and under the advice of counsel, he must suffer a loss resulting from the insolvency of the banker, even though the latter was in undoubted credit at the time of the loan.

2. A certificate given by a banker that an administrator had "deposited" in his office a sum of money payable to his order or the order of his attorney, "on return of this certificate, twelve months after date, with interest," evidences not merely a deposit but a loan or investment of the money.

3. The legal effect of the certificate cannot be modified by parol evidence of a contemporaneous agreement that the money might be withdrawn, but without interest, at any time upon return of the certificate, except upon proof of its omission from the instrument by fraud, accident, or mistake.

Statement of Facts.

Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 14 July Term 1888, Sup. Ct.; court below, number and term not given.

On September 14, 1886, Daniel M. Harman exhibited his account as administrator of the estate of John M. Harman, deceased. The accountant charged himself in said account as of date June 24, 1884, with cash received from R. A. Baer, executor of the will of Daniel Harman, deceased, $1,374.61. After certain items of credit for expenses of administration, counsel fees, etc., aggregating $195.23, were set out on the credit side of the account, there was the following entry:

"The funds of the estate, after deducting the expenses of administration notices, etc., were on the 25th day of June, 1884, deposited in the bank of A. S. Henderson, in the city of Lancaster, for safe-keeping until such time as they might be wanted for distribution; the said bank being at that time in undoubted credit. In January, 1885, the said A. S. Henderson died, when it was first discovered that he was insolvent. His estate is now in due course of settlement, but it is yet uncertain what amount of dividend the depositors will receive. Accountant therefore claims credit, for the present, for the balance, $1,179.38."

To the foregoing account, when presented for confirmation, Reuben A. Baer, executor of the will of Susanna Harman, deceased, who was the mother of said John M. Harman, deceased, and a creditor of his estate, filed certain exceptions, the fourth one of which was to the allowance of the credit claimed for the sum of $1,179.38. Thereupon *Mr. William Leaman* was appointed auditor to hear and determine the exceptions, etc.

On December 10, 1887, the auditor made a report in which he found the following facts:

On June 24, 1884, Reuben A. Baer, executor of the will of Daniel Harman, deceased, paid to D. M. Harman, administrator of John M. Harman, deceased, the sum of $1,374.61, being the share of the estate of said John M. Harman in the estate of said Daniel Harman. In view of the fact that there were claims against the estate of John M. Harman, to an amount sufficient, probably, to render it insolvent, Mr. D. G. Eshleman,

who was the counsel of D. M. Harman, administrator, advised him that it would not be safe for him to make distribution until after giving notice to creditors, and also that it would be well during the interval to get interest on the money, if possible, so that the fund might be increased.   The administrator then resided in Baltimore, Md.   He accordingly left money in the hands of Mr. Eshleman, to be deposited on interest, if possible.   Mr. Eshleman took the money, less some expenses and charges against it, to the banking house of A. S. Henderson in Lancaster city and deposited it, receiving the following certificate :

" $1,354.11.                                                    No. 1549

Banking House of A. S. Henderson,

LANCASTER, PA., June 25, 1884.

D. M. Harman, Administrator of the estate of John M. Harman, deceased, has deposited in this office thirteen hundred and fifty-four .11 dollars, payable to his order, or to the order of D. G. Eshleman, his attorney, on the return of this certificate, twelve months after date, with interest at the rate of four per cent per annum.

A. S. HENDERSON.

No interest allowed after due.                      W. H."

At the time the deposit was made and the certificate received, it was agreed between A. S. Henderson and Mr. Eshleman, as the latter testified, that the money might be drawn out at any time within the year, on the return of the certificate, but in that event no interest was to be paid thereon.

A. S. Henderson was a private banker and continued in business as such until January 13, 1885, when he died.   At the time the deposit was made and up to the time of his death, he was reputed solvent ; his bank was in good credit, and was considered and dealt with by business men and the community generally as in a perfectly safe and sound condition. Mr. Eshleman kept his individual deposits in Mr. Henderson's bank, and also the funds of trust estates under his control.

A few days after Mr. Henderson's death, it was discovered that he was insolvent, and that the depositors with him could not be paid in full.   On December 4, 1886, a dividend of $357.42, on the principal and interest of the deposit, was awarded out of the estate of Mr. Henderson to D. M. Harman,

the accountant, and afterwards paid to him. This was the entire amount received by the accountant upon the deposit made.

Mr. Eshleman, on behalf of the accountant, contended before the auditor, that under the foregoing facts the accountant should be charged with the said sum of $357.42, only, against which all credits should be allowed. The exceptant contended that under the law and the facts the accountant should be held liable for the loss on the deposit, and be charged with all moneys that at any time came, or ought to have come into his hands.

The auditor, citing Hemphill's App., 18 Pa. 303; Frankenfield's App., 11 W. N. 373; Worrell's App., 9 Pa. 508, ruled that the administrator, in dealing with A. S. Henderson and with his estate, had treated the deposit as a loan or an investment, evidenced by the written contract contained in the certificate; that, granting the alternative character of the contract, the accountant had made a loan or investment at the date of the certificate, which would continue as such until demand was made. He therefore sustained the fourth exception to the account, and, surcharging the accountant with $1,179.38, the amount of the credit claimed, reported accordingly.

Thereupon the accountant filed exceptions to the report, alleging that the auditor erred in sustaining said exception, and in not finding the balance in the accountant's hands to be the sum of $357.42.

The said exceptions having been argued, the court, PATTERSON, J., on May 11, 1888, filed an opinion, which, after stating the facts, proceeded:

That there is a difference in facts and in law, between a deposit, say of money, in a bank, and an investment or loan of money to a bank, cannot be doubted. Nor can we now doubt that the judicial law of Pennsylvania is that a loss which accrues of a trust fund invested or loaned on personal security must be borne by the trustee; not so, however, if the fund is a deposit made with common prudence in a banking institution of good standing and sound condition, in public estimation, and the loss is occasioned by sudden and unexpected insolvency.

Our Supreme Court has held that "all that a court of equity

requires from trustees is common skill, common prudence, and common caution," and, we may add, good faith; "and executors, administrators, or guardians, are not liable, beyond what they actually receive, unless in case of gross negligence; for, when they act as others do with their own goods and with good faith, and are not guilty of gross negligence, they are not liable : " Neff's Appeal, 57 Pa. 96. In the present case there is no allegation of fraud; no charge of bad faith or gross negligence; no want of common prudence, or common caution in the accountant or in his counsel, his agent. On the contrary, the auditor finds that all that was done in this matter, both by the accountant and by his attorney, was done in good faith and for the supposed best interests of the trust estate.

This question is now being considered in a court of equity, and why should not equity be dispensed? Should the question be determined on the evidence adduced, or upon only part of the evidence? The question paramount, and the question to be determined is, was the money placed in Henderson's bank by the accountant a deposit or an investment? In determining that question, not only must the written receipt of June 25, 1884, be considered, but also what was agreed to by the banker and the depositor cotemporaneous with that receipt. The evidence is uncontradicted and before the auditor, with all the explicitness and efficacy of the receipt in writing, that it was agreed between Henderson and the accountant's attorney " that the money deposited could be drawn out at any time within the year on the return of the certificate, but in that case no interest to be paid thereon."

＊　＊　＊　＊　＊　＊　＊　＊

The auditor and the court should look at this evidence, should give it all credence demanded by the circumstances. And if that is done, what must be the conclusion and presumption of law? That "the money deposited could be drawn out at any time within the year on the return of the certificate " is the evidence. It was then a deposit of the money, and so deposited that it could be drawn with the greatest facility at the shortest notice of danger. It was within the entire control of the trustee all the time, with all the characteristics of a pure deposit, and if the trustee acted in good faith and for the best interest of the estate, as he supposed

and had reason to believe, and without being guilty of negligence, how can a court of equity hold him responsible? As ruled in Roberts's Appeal, 92 Pa. 422, "according to the well established rules on this subject, there was no supine negligence in the trustee, which ought to make him responsible for the loss of this money."

There is sufficient ground for the interference of the court wherever the exercise of the discretion by the trustee is infected with fraud or misbehavior of some kind, but not as in the present case where there is an entire absence of even the suspicion of fraud; and, where trustees have a discretionary power they must exercise their judgment according to the circumstances as they exist at the time. "And a court of equity," as is said in Thompson v. Brown, 4 Johns Ch. 619, "always treated trustees acting in good faith with great tenderness."

Now what were the circumstances of or attending this fund in the hands of D. M. Harman, administrator of the estate of his relative, Jno. M. Harman, deceased? He received $1,374.61. His counsel, as testified, inasmuch as there were claims against Jno. M. Harman's estate, probably sufficient to render it insolvent, advised him that it would not be safe to make distribution of the money then until after he gave notice to creditors, and advised him also that it would be well during this time to get interest on this money if he could, so as to make the fund as large as possible for distribution. The administrator then lived in Baltimore, Md., and left the money with his counsel to deposit at interest if possible. And on June 25, 1884, his counsel deposited the money in the bank of A. S. Henderson, in the city of Lancaster, as appears in Henderson's receipt; "and at the time that deposit was made and the certificate taken it was agreed between A. S. Henderson, banker, and myself (accountant's counsel) that the money could be drawn out at any time within the year on return of the certificate." The receipt or certificate of Henderson was made payable to the order of D. G. Eshleman as his (the administrator's) attorney, which shows the banker knew his relation to the administrator, and his authority to make a contract for him. All the circumstances of the case, therefore, show that this was a deposit, and not a loan, and we must, therefore, and now do set aside the finding of the auditor that it

was a loan. It was an arrangement made for the best interests of the estate; to be drawn out any time if wanted, and if not wanted to bear interest. The auditor has found that Mr. Eshleman is a well known lawyer of the best reputation. There cannot be even a shadow of doubt thrown on his testimony. The auditor himself has no doubt about the truth of Mr. Eshleman's testimony. He says in his report that "it has been found that there was an oral agreement or arrangement between Mr. Henderson and Mr. Eshleman." The deposit was made about six and one half months, and then, to use the language of the auditor, "a few days after the death of Mr. Henderson the disclosure came suddenly and without premonition that his estate was insolvent, and that the claims of depositors in his bank could not be paid in full." Is there any want of good faith, vigilance or watchfulness made to appear in all the foregoing on the part of the administrator or his counsel? We can perceive none.

What other sensible thing could be done, the banker being dead and his estate insolvent, than at the distribution of the banker's assets, to present the receipt or certificate of deposit, with all the interest accrued, and demand the dividend pronounced? Should the administrator have surrendered his certificate and demanded the money on the oral contract? Had he done so, it would have brought no response. There were no funds in the bank to answer that demand. Yet the learned auditor argues, because he did not do so, but presented the certificate with the accrued interest added, and obtained thereon a dividend out of the insolvent banker's estate, therefore, he dealt with the deposit as an investment and must be held for the loss. We think that by any other course of dealing with the money so deposited, after the insolvency and death of Mr. Henderson, the banker, became known, than that which was adopted, the administrator would have been justly chargeable with want of good faith. The trustee, or administrator, seems to have done, and by the advice of counsel, too, everything he could profitably do. Every step was taken by the advice of counsel and it does not appear anywhere that by neglect of duty or mismanagement of the trust, he has rendered himself liable for the loss to this estate.

2 Lewin on Trusts, 322, reads, "that a trustee is called

upon to exert precisely the same care and solicitude on behalf of his cestui que trust, as he would do for himself, but greater measure than this a court of equity will not exact." The Supreme Court in Eyster's App., 16 Pa. 372, from a decree of the Orphans' Court of Franklin county, says: "It has been said in this court to be the harshest demand that can be made in equity to make a trustee answerable for what never was in his hands, or to make up a deficiency not owing to his wilful default." This rule has been so often laid down in reports, that it seems unnecessary to refer to any authorities on that point. But we here may refer to the sound and equitable opinion of Lord HARWICKE as expressed in King v. Earl of Plymouth, 1 Dick. 126, and quoted by Chief Justice GIBSON in During's App., 13 Pa. 235: "If there is no mala fides," said he, "nothing wilful in the conduct of the trustee, the court will always favor him. For, as a trust is an office necessary in the concerns between man and man, and which if faithfully discharged is attended with no small degree of trouble and anxiety, it is an act of great kindness in any one to accept it. To add hazard and risk to that trouble, and to subject a trustee to losses, which he could not foresee, would be a manifest hardship and deter any one from accepting so necessary an office." And the Chief Justice adds: "His (Lord HARWICKE's) rule of responsibility is politic and just."

The above manifestly just rule applied to trustees ought, we think, to prevail in equity and be administered in this court. The whole of this contract of deposit, the written and the verbal parts, must be considered by the court, the auditor having found both to be existing facts. The accountant in the opinion of the court is not, under the facts and the law, accountable for the loss occasioned by the insolvency or failure of Henderson's bank.

In accordance with the foregoing opinion, the court restated the report of the auditor, surcharging the accountant with the dividend received from the estate of A. S. Henderson, $357.42, against which were credited the costs and expenses of administration and audit, and so decreed. Thereupon the exceptant to the account as first exhibited took this appeal, specifying that the court erred in sustaining the several exceptions to the auditor's report.

*Mr. Eugene G. Smith* and *Mr. L. Ellmaker* (with them *Mr. G. C. Kennedy*), for the appellant.

Counsel cited: Frankenfield's App., 11 W. N. 373; Hemphill's App., 18 Pa. 303; § 14, act of March 29, 1832, P. L. 193; § 1, act of May 8, 1876, P. L. 133; § 2, act of April 13, 1854, P. L. 369.

*Mr. D. G. Eshleman*, for the appellee:

1. Trustees will not be held responsible when acting in good faith and under the advice of counsel: Calhoun's Estate, 6 W. 189; Spering's App., 71 Pa. 25; Vez v. Emery, 5 Ves. 144. It is the hardest demand that can be made in equity, to compel trustees to make up a deficiency not owing to their wilful default: Witmer's App., 87 Pa. 124; Jackson v. Jackson, 1 Atk. 513; Johnson's App., 12 S. & R. 317; Neff's App., 57 Pa. 91; Gochenauer v. Froelich, 8 W. 22. The measure of diligence and care required of a trustee, is that which a man of ordinary prudence would practice in the care of his own estate: Fahnestock's App., 104 Pa. 46; Eyster's App., 16 Pa. 372; Witner's App., 87 Pa. 120; 1 Lewin on Trusts, Amer. Law Series, 294*.

2. Frankenfield's App., 11 W. N. 373, is to be distinguished; yet the opinion in that case contains a summary of the principles of equity upon which the accountant in this case relies. In that case, the certificate was for three months with interest, but the money could not be withdrawn without thirty days' notice of the intention. Mr. Justice GREEN says: "During that period it was entirely beyond the control of the depositor. He could make no legal demand for the money until at least three months had expired, and not even then unless he had given thirty days' notice of his intention to withdraw the fund. In no essential feature does this transaction differ from an ordinary loan. . . . . The distinguishing feature of the case is, that even if the money be regarded as deposited in the technical sense, it was also loaned, and hence was subject to the qualities and incidents of a loan."

OPINION; MR. JUSTICE GREEN:

The certificate of deposit in this case is of the same form as the one in Frankenfield's App., 11 W. N. 373, and it was

undoubtedly evidence of a loan for twelve months at four per cent interest, of the amount deposited. Upon the considerations mentioned in the opinion in that case, the administrator, D. M. Harman, who made the loan, must suffer the loss resulting from the insolvency of Henderson, unless there is something in the present case to take it out of the operation of the decision in Frankenfield's Appeal.* The only matter set up

---

*The opinion in Frankenfield's Appeal, filed April 3, 1882, so far as relating to the question raised in the above case, was as follows:

GREEN, J.: In this case the appellant, who was the committee of a lunatic, having trust funds in his hands, made a deposit of $2,000 thereof in the Franklin Savings Bank of Allentown, Pa., and took a certificate therefor in the following form:

| Certificate | Franklin Savings Bank, |
| of Deposit. | Allentown, Pa., [Stamp.] |
| | November 11th, 1876. |

S. A. Frankenfield, Committee of Samuel Frankenfield, has deposited in this Bank Two Thousand Dollars, payable to his order, three months after date, with interest at the rate of six per cent per annum, on return of this certificate.

Thirty days' notice to be given of the intention to withdraw this deposit.

$2,000.

J. E. ZIMMERMAN,                           D. H. MILLER,
        Cashier.                    Per J. E. Z., President.

The deposit was made in the name of the committee as such; it was done by the advice of counsel, and at the time of the transaction the bank was in good repute. So far, therefore, as these considerations affect the question of the appellant's liability for the loss of the money by reason of the insolvency of the bank, it must be conceded at once that no liability would arise. There was no bad faith on the part of the appellant, and although the bank was really insolvent when the deposit was made, that fact was not known in the community. The question at issue is thus reduced to the narrowest limits. If this had been an ordinary deposit, subject to the check of the depositor from the day it was made, it is very probable the appellant would not have been liable. But it was not such a deposit. In practical effect, it was a loan to the bank for a fixed period and payable with interest. During that period it was entirely beyond the control of the depositor. He could make no legal demand for the money until at least three months had expired, and not even then unless he had given thirty days' notice of his intention to withdraw the fund. In no essential feature does this transaction differ from an ordinary loan. It is true, the borrower is a bank and not an individual. But that circumstance is of no moment in determining the character of the transaction. It is a loan still, just as it would have been had the depositary been a citizen or

to work this result is a parol contemporaneous agreement made by the counsel of Harman with Henderson, the banker, that the money might be drawn out at any time within the year on the return of the certificate, but in that event without interest. As such a contract is entirely contrary to the written agreement, it is incompetent to change the latter by means of the parol testimony, except upon proof of its omission from the written contract by fraud, accident, or mistake. An examination of the testimony of Mr. Eshleman disproves the possibility of any such theory. He simply says that such a verbal agreement was made at the time of the deposit. He does not say that he was induced to make the deposit and accept the certificate, upon the faith of any promise that the money might be drawn out at any time within the year, nor that there was any kind of fraud, accident, or mistake in the transaction. It is unnecessary to cite the numerous authorities that unless these elements are present, the written contract must stand as it is, unaffected by the parol proof. The question of good

---

a firm of the greatest wealth, or a manufacturing or business corporation of large capital and resources. In these latter cases, the security would apparently have been greater, for the capital of this bank was actually very small. The distinguishing feature of the case is, that even if the money be regarded as deposited in the technical sense, it was also loaned, and hence was subject to the qualities and incidents of a loan superadded to those which belonged to it as a deposit.

Nor does the brevity of the time affect the question. There could be no difference in principle between a deposit payable in three months and one payable in twelve or twenty-four months, when the question relates only to its character as a loan. This being so, the law regulating investments by committees of lunatics becomes applicable to the case and controls it. The act of June 13, 1836, § 25, P. L. 597, expressly directs that such investments must be made under the direction of the Court of Common Pleas, and only exempts the committee from liability for loss when he pursues this course and in good faith. In Hemphill's App., 18 Pa. 303, it was formally and definitely settled that a trustee can only protect himself from risk when he invests the trust fund in real or governmental securities or makes the investment in pursuance of an order by the court. On page 306, BLACK, C. J., says: "It has never been doubted anywhere that a loss which accrues of a trust fund invested on personal security, must be borne by the trustee." These considerations determine that the auditor and court below were right in holding the appellant liable for the loss of the sum of one thousand dollars, deposited with the Franklin Savings Bank.

faith on the part of the administrator and his counsel in making the deposit does not arise, because it cannot change the result. No one can doubt that so far as they were concerned the highest integrity and utmost good faith characterized the transaction. It is simply an instance of misplaced confidence, unfortunate in its consequences, but which must nevertheless be disposed of according to the plain legal rules which govern all similar cases.

> The decree of the Orphans' Court is reversed and record remitted, with instructions to restate the account in accordance with the foregoing opinion, the costs of this appeal to be paid by the appellee.