MYRA HARDING v. E. V. CANFIELD.

July 2, 1898.

Nos. 11,178—(236).

**Executor—Loss of Trust Funds—Deposit in Bank—Proper Degree of Care.**

The test of the liability of an executor for the loss of trust funds deposited in a bank which failed is whether he honestly exercised in the premises that degree of care which men of common prudence ordinarily exercise in their own affairs.

**Same—Evidence of Executor.**

Upon the trial of such an issue, it was not error for the trial court to permit the executor to testify that when he made the deposit he believed the bank was solvent, and that he handled the trust funds as carefully as his own.

Same—Findings Sustained by Evidence.

*Held,* that the evidence in this case sustains the finding of the trial court to the effect that the respondent did exercise due care and prudence in the management of the funds in his hands as executor.

Appeal by Myra Harding, residuary legatee under the will of Sarah A. Peck, deceased, from a judgment of the district court for Goodhue county, entered pursuant to findings and order by Crosby, J., reversing a decree of the probate court for Goodhue county which directed E. V. Canfield, executor of the estate of said testate, to pay said Myra Harding $448.10. Affirmed.

*Albert Johnson,* for appellant.

It was error to permit the executor to testify as to his belief in the solvency of the bank, and as to whether he handled the funds of the estate just as carefully as he handled his own. Such evidence is merely opinion evidence. 2 Jones, Ev. § 361. An executor is bound to use such diligence and care in the management of the estate as men of ordinary prudence and vigilance would use in the management of their own affairs. Underhill, Trusts, 253; Hutchinson v. Lord, 1 Wis. 249; Litchfield v. White, 7 N. Y. 438; King v. Talbot, 40 N. Y. 76; In re Dean, 86 N. Y. 398; In re Cornell, 110 N. Y. 351; Willis, Trustees, 125; 1 Lewin, Trusts, 152; Schouler, Exrs. §§ 315, 316; Croswell, Exrs. § 113; Wood v. Myrick, 17 Minn. 386 (408).

*J. C. McClure,* for respondent.

The question of the good faith of respondent in his manner of handling the funds in controversy was a subject of inquiry on the trial, and hence testimony as to respondent's belief in the solvency of the bank, and as to the fact that he handled the funds of the estate as carefully as his own, was admissible. Berkey v. Judd, 22 Minn. 287; Garrett v. Mannheimer, 24 Minn. 193; State v. Lee, 22 Minn. 407; Gates v. Manny, 14 Minn. 13 (21); Cogley v. Cushman, 16 Minn. 354 (397). All that the law requires of an executor is that he handle the money of the estate as carefully as he does his own. Atterberry v. McDuffee, 31 Mo. App. 603; In re Butler's Estate, 1 Con. Sur. 58.

START, C. J.

The respondent is the executor of the last will of Sarah A. Peck, deceased, and the appellant is her residuary legatee. On December 31, 1896, the probate court in and for Goodhue county settled the final account of the respondent as such executor, and disallowed a credit item therein of $448.10. This amount had been deposited in the Bank of Zumbrota, which afterwards became insolvent. The disallowance of the item left a balance due from the executor of $448.10, which was ordered to be paid to the appellant. The respondent appealed to the district court from so much of the order of the probate court settling his final account as disallowed the item, and directed the balance to be paid to the appellant.

The district court, upon a trial of the case therein without a jury, made its findings of fact, and found, among other matters, the following:

"Fourth. That said executor, E. V. Canfield, deposited said sum of four hundred and forty-eight dollars and ten cents in the Bank of Zumbrota, which bank became insolvent after the money was deposited therein, and that sum is all, or nearly all, a loss.

Fifth. That in making such deposit in said bank and permitting it to remain therein, said executor exercised reasonable care and prudence, and such care and prudence as a person of ordinary care, prudence and judgment would have exercised under the same or similar circumstances, and that the loss of the said money must be borne by the said estate, and not by the said executor."

As a conclusion of law, the trial court directed judgment reversing the order of the probate court as to the disallowance of the credit item in question, and from the judgment so entered the residuary legatee appealed to this court.

1. The trial court, over the objection and exception of the appellant, permitted the respondent to testify that when he deposited the money he honestly believed the bank was all right and solvent, and that he handled the funds of the estate just as carefully as he did his own. It is true, as claimed, that what the belief of the respondent was as to the solvency of the bank when he made the deposit, and whether he managed the trust funds as carefully as he did his own, are not the test of his liability. The test is whether he honestly exercised in the premises that degree of care which men

of common prudence ordinarily exercise in their own affairs. If he failed to exercise such care, the fact that he acted in good faith will not exonerate him, but evidence showing that he acted in good faith, and managed the trust funds as he did his own, is competent as tending to show that he exercised due care. Its value is for the court or jury, when considered in connection with the other testimony.

2. The only other question on this appeal is whether the fifth finding of fact made by the trial court is sustained by the evidence. If it is, the conclusion of law and judgment are right. The bank became insolvent after the money was deposited therein. The act of the respondent in making the deposit originally is not questioned. "The complaint here," to quote from appellant's brief, "is that he did not withdraw the money from that institution when he discovered its precarious condition."

The evidence is undisputed that the respondent was the cashier of the bank from 1878 to August, 1893, and president from that date until its final failure in January, 1894; also that the bank loaned, prior to May, 1893, to the Guaranty Loan Association of Minneapolis, a financial institution then reputed to be solvent, some $90,000. In May, 1893, the officers of the bank learned for the first time that the loan association was insolvent. Thereupon the bank closed its doors. It succeeded in making an arrangement with its depositors and creditors to extend the time of the payment of their claims for six months, and it resumed business. But it was seriously affected by the loss of its investments with the loan association, and in January, 1894, a receiver for it was appointed.

The appellant claims that the executor failed to exercise reasonable care for the preservation of the fund because he did not withdraw it after the bank resumed in May, and before the final failure in January following. The bank was only able to resume by reason of an arrangement with its depositors and creditors to extend the time of the payment of their claims to six months. The executor testified on this point as follows:

"At the time of its suspension in May, 1893, there were $1,400 of the funds of the estate in the bank; afterwards I paid Mrs. Harding

$800. I drew out as much as I thought that I could under the arrangement with the creditors. It was agreed between the bank and the majority of the creditors that their deposits should not be withdrawn for six months from the time it reopened in May, 1893. I signed no agreement to that effect, but it was understood that I should let the funds of the estate remain in the bank for six months. This money was deposited in the bank in my name as executor, and was at all times subject to my check, and between the suspension in May, 1893, and the failure in January, 1894, nothing aside from this arrangement prevented me from withdrawing the same. When I deposited the money of the Peck estate in the bank, I had no reason to believe that the bank was insolvent."

It is not clear that a prudent man would have withdrawn the fund from the bank after it resumed. It is to be noted that the loss occurred when the bank first suspended, by reason of the failure of the loan association; and the arrangement with creditors was to enable the bank to resume, and creditors to secure the ultimate payment of their claims in full. If any considerable number of the creditors had insisted on withdrawing their money, it would only have hastened the appointment of an assignee or receiver. Upon the whole evidence, we are of the opinion that the finding of the trial court in question is sustained by the evidence.

Judgment affirmed.

CANTY, J.

I concur. In determining the duties which Canfield as executor owed to the beneficiaries of this estate, it is wholly immaterial what duties he owed the bank as its president. The question is: Did he, having regard solely to the interests of said beneficiaries, exercise reasonable care and prudence in leaving the money in the bank after it had suspended and reopened? It was not a question merely of whether he could have drawn this money out of the bank, but whether he could have drawn it out and retained it. He might, in the precarious condition of the bank, have caused it to suspend again, and if a receiver or assignee was appointed for it under the insolvency law, he might be compelled to pay over the money so drawn out on the ground that the drawing out of the same was an unlawful preference. Under the circumstances, I cannot say that the evidence shows conclusively that a man of ordinary care and

prudence would not have let it remain, under the hope that, by so doing, the estate would run less risk of finally losing it.