STANKEY, RESPONDENT, *v.* CITIZENS' NATIONAL BANK OF LAUREL, APPELLANT.

(No. 4,815.)

(Submitted September 12, 1922.  Decided September 27, 1922.)

[209 Pac. 1054.]

*Banks and Banking—Liability for Deposit—Deposit Slips— Checks—Denial of New Trial—Conflict in Evidence—Discretion.*

Banks and Banking—Liability for Deposit—Deposit Slip a Receipt—Parol Evidence.
  1.  A deposit slip is a mere receipt or memorandum and is not conclusive as against the bank issuing it, parol evidence being admissible to explain it; standing alone, therefore, it is not proof of liability and will not support an action against the bank if payment be refused.

Same—Checks not Assignment *Pro Tanto* of Drawer's Account.
  2.  Under the Negotiable Instruments Law, the giving of a check is not an assignment *pro tanto* of the drawer's deposit so as to give the holder a right of action against the bank in case payment is

  2.  Ordinary bank check as assignment of funds of drawer, see notes in 19 **Am. St. Rep.** 609; 5 **Ann. Cas.** 189, 939; **Ann. Cas.** 1913D, 418.

refused, liability not attaching until the bank has accepted or certified the check.

Same—When Check for Deposit may be Dishonored.

3. After receiving a check for deposit and issuing a deposit slip thereon, a bank may, in the absence of any element of estoppel, dishonor the check and charge it back on the account of the depositor when it develops on investigation that there are insufficient funds out of which to pay it.

Same—Action on Deposit—Acceptance of Check for Deposit Jury Question.

4. Evidence in an action against a bank to recover the amount of a deposit *held* to have presented an issue for the jury's determination whether the alleged deposit had been made and accepted, though no entries thereof had been made in its books.

Same—Duty to Keep Faithful Account With Depositors.

5. A bank is the debtor of its general depositors and under obligation to keep careful and faithful accounts with them, and cannot acquire any right which it would not otherwise have by failure or refusal to make entries in its books.

New Trial—Denial—Conflict in Evidence—Discretion.

6. Where the evidence is in substantial conflict as to the material issues raised by the pleadings, the action of the trial court in denying defendant's motion for a new trial is within its sound, legal discretion, and cannot be disturbed on appeal.

*Appeal from District Court, Yellowstone County; A. C. Spencer, Judge.*

ACTION by E. H. Stankey against the Citizens' National Bank of Laurel. From an order overruling its motion for a new trial, defendant appeals. Affirmed.

*Messrs. Shea & Wiggenhorn,* for Appellant, submitted a brief; *Mr. R. G. Wiggenhorn,* argued the cause orally.

*Mr. B. L. Price* and *Messrs. Goddard & Clark,* for Respondent, submitted a brief; *Mr. O. F. Goddard* argued the cause orally.

MR. CHIEF COMMISSIONER LENTZ prepared the opinion for the court.

The complaint in this action alleges that on December 1, 1916, plaintiff deposited $1,277.60 in defendant bank; that he later drew out a portion thereof, and that on December 2, 1916, he presented his check for the balance of $755, which

was refused payment.   Judgment is demanded for $755, with interest.

Defendant in its answer denies that any deposit with it was ever made by plaintiff and admits refusal to pay the check. As a special defense defendant has alleged and presented evidence to establish that prior to December 1, 1916, one Henry Sturm and Minnie Sturm, his wife, being indebted to defendant in an amount exceeding $4,000, made a sale of personal property on their ranch to pay part of said indebtedness; that defendant, under authorization from the Sturms, clerked said sale, paid the expenses thereof, and deposited the proceeds in its sales account for the purpose of being applied on said debt; that on the evening of December 1, 1916, after regular banking hours, a conference for the purpose of checking up the sale and arriving at the exact amounts due the respective parties was held in the offices of defendant bank, there being present H. D. Kenyon and C. J. Miller, vice-president and cashier, respectively, of the bank, Henry Sturm representing his wife, Minnie, in whose name all business of the Sturms was transacted, and the plaintiff, E. H. Stankey, son-in-law of the Sturms; that, in furtherance of a conspiracy to defraud defendant, Minnie Sturm delivered to plaintiff a check on defendant bank for $1,277; that the check was without consideration and was a mere contrivance to prevent defendant from collecting its debt, and further that the proceeds of the sale, being in the sales account, were not subject to check by Minnie Sturm; that plaintiff then and there presented said check for payment and deposit with defendant bank to his credit, claiming that it represented plaintiff's interest in the proceeds of the sale; that plaintiff falsely claimed to own certain hogs disposed of in said sale, whereas the same were in fact the property of the Sturms; that immediately after said check was so presented Miller, cashier of the defendant bank, made out a deposit slip, laying the same upon his desk; that Miller had understood that plaintiff had furnished a few items of personal property for the sale and assumed that the check represented the price thereof, but began

to inquire further as to plaintiff's exact interest in the proceeds of the sale; that, without any affirmative act on the part of said Miller, plaintiff seized the deposit slip and refused to return it; that defendant never intended to deliver the deposit slip to plaintiff, its return was immediately demanded, and plaintiff was informed that his account would not be credited with the amount of the check; that, although plaintiff refused to return the deposit slip, defendant has never cashed the said check, nor accepted it for payment or made any entry of same or extended any credit to plaintiff on the books of defendant bank on account of said check; that plaintiff did not on December 2, 1916, or at any subsequent time, have any money on deposit in defendant bank, and therefore payment of the $755 sued for was refused.

In reply plaintiff alleged and presented evidence to establish that the sale was a joint disposal of the property of plaintiff and the Sturms, and was clerked by defendant through its vice-president, said H. D. Kenyon, who made out an itemized list showing the exact amount for which each article was sold; that at said conference Kenyon, plaintiff, and Henry Sturm, representing Minnie Sturm, checked up and apportioned the items of property disposed of and the amount for which each was sold, and, after deducting the costs of the sale, agreed upon the amount which plaintiff and Minnie Sturm were each to receive; that all parties agreed that the amount due from the proceeds of the sale to plaintiff was $1,277.60, and the amount due Minnie Sturm was $1,321.91; that thereupon plaintiff was given a check from Minnie Sturm for said $1,277.60; that plaintiff immediately handed the check to Miller, the cashier, who then made out and handed to plaintiff a deposit slip for the amount.

The record further shows that at the time the deposit slip in question came into plaintiff's hands he made out and delivered to defendant a check for $251.60 in payment of a note of the Sturms running to defendant; that defendant canceled the note and delivered it to plaintiff, and that plaintiff also at the same time delivered to defendant another check

for $269.50, drawn in favor of Minnie Sturm, which was later credited on her debt to defendant, although plaintiff had no deposit in defendant bank other than that involved in this dispute. In fact, plaintiff's account at the defendant bank was overdrawn thirty-one cents, and had stood in that condition since November 16, 1916. Plaintiff paid defendant this overdraft of thirty-one cents some time after its refusal to honor his check for the $755 sued for in this action.

The record further shows that the proceeds of the sale were not credited as a whole to the individual account of Minnie Sturm. However, the bank of its own motion transferred $1,188.54 of said fund from the alleged sales account to the individual account of Minnie Sturm in order to pay her check for a like sum in discharge of a lien of third parties on the property sold. Minnie Sturm's check for $1,277.60, which plaintiff claims to have deposited, was never marked paid and was never credited to plaintiff. This check and the two drawn by plaintiff were retained in defendant's possession until the trial of this action; no entry of any of them having been made on defendant's books.

Kenyon, vice-president of defendant bank, testified that $701 of the amount claimed by plaintiff is still in defendant's hands, and has not been applied on the Sturm debt, while Miller, the cashier, testified that the whole amount of $1,277.60 claimed to have been deposited by plaintiff has been so applied, although defendant admits that a cow which sold for $50 belonged to plaintiff.

The verdict of the jury was for the full amount demanded with interest. This appeal is from an order overruling defendant's motion for a new trial.

Defendant's counsel assigns as error the denial of his motion for a directed verdict. He insists that, regardless of the conflict in the testimony as to whether the deposit slip in question was delivered to plaintiff voluntarily, the record shows conclusively that no valid deposit was ever made by plaintiff. He contends a fair interpretation of the record shows without dispute that the check for $1,277.60 offered

for deposit was never accepted for payment; that defendant bank held .the proceeds of the sale in a "sales account" or "trust fund," and, never having entered them on the individual ledger to the credit of Minnie Sturm, there were no funds with which to pay her check; that defendant never entered the amount of the check on the books of the bank to plaintiff's credit, nor charged it on Minnie Sturm's individual account; and that it follows as a matter of law that no deposit was made.

It is well settled that a deposit slip is a mere receipt or [1] memorandum, and is not conclusive as against the bank issuing it. Parol evidence is admissible to explain it, in the same manner as in the case of any other receipt. Standing alone, it is not proof of liability and will not support an action against the bank. (2 Daniel on Negotiable Instruments sec. 1704; *First Nat. Bank of Union Mills* v. *Clark,* 134 N. Y. 368, 17 L. R. A. 580, 32 N. E. 38; *Hotchkiss* v. *Mosher,* 48 N. Y. 482.)

In *First Nat. Bank of Union Mills* v. *Clark, supra,* the court said: "The use of a deposit slip is well understood. It constitutes an acknowledgment that the amount of money named therein has been received. It is a receipt, and nothing more. No promise is made to pay the sum named on return of the paper, nor is it expected, either by the depositor or depositary, that it will ever be presented to the bank again, unless a dispute should arise as to the amount of deposit, in which event it would become important as evidence. It is not intended to furnish evidence that there remains money in the bank to the credit of a depositor, but to furnish evidence, as between depositor and depositary, that on a given date there was deposited the sum named. It may all, or nearly all, be checked out at the moment of making the deposit slip, but the depositor will not be refused it on that account, for long-established usage has fixed its status in banking as a mere receipt—an acknowledgment that the depositor placed the

amount named therein on deposit. It is not proof of liability, and it will not support an action against the bank."

While it is considered in some jurisdictions that the giving [2] of a check is an assignment *pro tanto* of the drawer's deposit, so as to give the holder a right of action against the bank if payment is refused, the adoption of the Negotiable Instruments Law in this state relieves the bank of any such liability unless and until it accepts or certifies the check.

Section 8534, Revised Codes of 1921, reads as follows: "A bill of itself does not operate as an assignment of the funds in the hands of the drawee available for the payment thereof, and the drawee is not liable on the bill unless and until he accepts the same."

Section 8596, Revised Codes of 1921, reads as follows: "A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until he accepts or certifies the check."

After receiving a check for deposit and issuing a deposit [3] slip thereon, a bank may, in the absence of any element of estoppel, dishonor the check and charge it back on the account of the depositor where it develops on investigation that there are insufficient funds out of which to pay it.

In *Ocean Park* v. *Rogers*, 6 Cal. App. 678, 92 Pac. 879, the court held: "When a check on the same bank is presented to the receiving teller for deposit by a depositor, with his pass-book, together with a deposit slip upon which the amount of the check, together with other deposits, is entered, and said teller receives the same and enters the amount thereof in the pass-book to the credit of the depositor, stamps the check 'Paid,' and impales the same upon a file, nothing more being said or done, this does not of itself raise the presumption that such check was received as cash or otherwise than for collection, and the bank has until the close of banking hours on the day of deposit to ascertain whether the account of the drawer will permit of a transfer of the amount of the check to

the depositor's account. If it will not, then, in the absence of any element of estoppel (and there is none here), the bank may charge back the amount to the depositor and return the check. Notwithstanding the fact that there are no funds to pay the check, the bank may elect to honor it as an overdraft, in which case a transfer of the amount from one account to the other is made upon the books of the bank. To constitute such transfer two acts are necessary, namely, charging the one account and crediting the other, with the amount of the check. In the case at bar it appears that the books of the bank were posted in alphabetical order, and that Mrs. Rogers' account was credited with the check, but no charge or entry was made against the account of Widney for the reason that he had no funds therein. Under these circumstances, the credit given Rogers did not constitute any transfer of the amount of the check to Rogers' account, nor did the act show an intent on the part of the bank to recognize the check as a cash deposit. 'The fact that the depositor's account is credited with the amount of the items taken for collection does not of itself operate to transfer the title to the paper, for, by the custom of bankers, the collection is charged back at once if not paid. (3 Am. & Eng. Ency. of Law, 2d ed., p. 817.)' "

The question here is: Did the defendant bank in fact accept [4] as a deposit from plaintiff the Minnie Sturm check in question, honor the same, and give him credit for it?

While it is true that defendant did not make entries of this alleged deposit on its books, crediting plaintiff and charging Minnie Sturm with the amount, it did honor his two checks for $251.60 and $269.50, respectively, when there were no funds on deposit with defendant out of which to pay them, except the deposit in dispute. While it is also true that defendant did not make entries on its books crediting Minnie Sturm with the proceeds of the sale as a whole, it did, when occasion arose, credit her with enough of the fund to pay her check for $1,184.54 to discharge a prior lien on the property sold.

[64 Mont. 309.]

It is not apparent by what process of reasoning defendant felt authorized to resort to this so-called sales account for the payment of one of Minnie Sturm's checks, but could not do so for the payment of another; neither is it apparent out of what fund defendant paid plaintiff's two checks if it in fact dishonored the check for $1,277.60, nor why said check was not returned to him if it refused his deposit.

A bank is the debtor of its general depositors and is under [5] obligation to keep careful and faithful accounts with them.    (*Brown* v. *Lynchburg Nat. Bank,* 109 Va. 530, 17 Ann. Cas. 119, 64 S. E. 950.)    Defendant cannot acquire any rights which it would not otherwise have by the device of failing or refusing to make entries in its books.

The record in this case clearly presented an issue for the jury as to whether the alleged deposit was in fact made by plaintiff and accepted by defendant, and the motion for a directed verdict was properly denied.

Since the record discloses that the evidence is in substantial [6] conflict as to the material issues raised by the pleadings, the action of the trial court in denying defendant's motion for a new trial was within its sound legal discretion and cannot be disturbed on appeal.

After a careful examination of the record in this cause, and the briefs and arguments of counsel, we are unable to find any prejudicial error, and we therefore recommend that the order be affirmed.

PER CURIAM: For the reasons given in the foregoing opinion, the order appealed from is affirmed.

*Affirmed.*