IN RE WELCH'S ESTATE.

(No. 7,386.)

(Submitted May 3, 1935. Decided May 23, 1935.)

[45 Pac. (2d) 681.]

48

*Mr. S. P. Wilson* and *Mr. John A. Stagg*, for Appellant, George B. Welch, Administrator, submitted a brief; *Mr. Wilson* argued the cause orally.

*Mr. M. J. Thomas* and *Mr. E. M. Keeley*, for Respondent, C. D. Welch, Guardian, submitted a brief; *Mr. Keeley* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

In 1931 Jane E. Welch, eighty-six years of age, was declared to be incompetent, and C. D. Welch, one of her four sons, was appointed guardian of her person and estate with an award of $100 per month for her support. For some time prior to his

appointment, C. D. Welch had taken care of his mother and managed her affairs, during which time she had maintained a checking account, and a substantial amount on time deposit, in the United States National Bank of Deer Lodge. At the time the guardian qualified the checking account was exhausted and there remained $6,000 on time deposit. As the certificates of deposit matured, Welch transferred a part of the account to another bank, caused sufficient funds for his present needs to be deposited in the checking account, and took certificates of deposit for the balance. At no time did the guardian secure an order of court for the investment of funds.

It does not appear that the guardian had any intimation that the bank was not sound and solvent, when, on October 22, 1932, it went into the hands of a receiver. At the time the bank closed, the guardan was the holder of a certificate which reads in part: "Nov. 15, 1931, No. 6042. C. D. Welch, Guardian of Jane E. Welch has deposited in this bank * * * $1,500.00 payable to the order of Self * * * on return of this Certificate properly endorsed 6/12 months after date with interest to maturity only at the rate of 4 per cent. per annum." The guardian duly presented his claim and was issued a receiver's certificate for the amount due.

On December 16, 1932, the ward died, and thereafter a second son, George B. Welch, was appointed and qualified as administrator. The guardian filed his final account and petition for discharge, and attached thereto the certificates above described, and thereto the administrator filed objections, contending that the guardian should be charged personally with the $1,500. On a hearing the court overruled the objections and entered its decree settling the account and discharging the guardian. The administrator has appealed from this judgment.

A guardian is a trustee of the funds which come into his hands, but is not an insurer thereof; he is required to manage the estate with prudence and without waste, and, if possible, to support the ward from the income and profits from the estate. (Sec. 10419, Rev. Codes 1921.) To this end he is authorized to apply to the court for permission to invest capital (sec.

10443, Id.), which, as trustee, he is required to "keep safely." (Sec. 5881, Id.) If the particular money on hand was derived from the sale of property of the ward for the express purpose of investment, then "the guardian must make the investment according to his best judgment, or in pursuance of any order that may be made by the court." (Sec. 10431, Id.) In the light of this provision and of the fact that section 10443, above, merely provides impliedly that the guardian "may" apply to the court, a query is propounded in *In re Allard's Guardianship*, 49 Mont. 219, 141 Pac. 661, as to whether a guardian must loan his ward's money without direction from the court to do so. It is now settled that if the guardian does loan such funds without being authorized so to do by an order of court, he "assumes the risk" of loss, and, it being shown that the loan is uncollectible, the amount thereof is properly chargeable to the guardian. (*In re Kostohris' Estate*, 96 Mont. 226, 29 Pac. (2d) 829.)

There is no provision for the deposit of guardianship funds, but ordinary prudence dictates that such funds should be deposited for safekeeping in a reputable bank, and if, without information sufficient to put a reasonably prudent man on his guard, funds so deposited, subject to withdrawal by check, are lost by the closing of the bank, the guardian is not personally liable therefor. (*Pethybridge, Guardian,* v. *First State Bank of Livingston,* 75 Mont. 173, 243 Pac. 569.) This rule applies to a temporary deposit, subject to withdrawal at any time, of funds held pending investment or other disposition. (*Jacobus* v. v. *Jacobus,* 37 N. J. Eq. 17; *Norwood* v. *Harness,* 98 Ind. 134, 49 Am. Rep. 739; *Harding* v. *Canfield,* 73 Minn. 244, 75 N. W. 1112.)

However, a deposit for a fixed period of time, during which it cannot be withdrawn, on certificate of deposit drawing interest, is declared to be, in effect, a loan of the money to the bank, and if during such period the bank fails, the loss falls on the guardian. (*Baer's Appeal,* 127 Pa. 360, 18 Atl. 1, 4 L. R. A. 609; *In re Law's Estate,* 144 Pa. 499, 22 Atl. 831, 14 L. R. A. 103; *Walker* v. *Walker,* 42 Ga. 135; *Gaver* v. *Early,* 191 Cal. 123, 215 Pac. 394.) This rule was applied by this court

to the account of a guardian who handled the funds of his ward in much the same manner as did the guardian in the case at bar. In that case the final certificate of deposit was issued to the guardian on August 14, 1933, the period it was to run being six months; the bank of issuance failed on December 13, 1933, within the six months' period, and the guardian was charged with the loss. (*Kelly* v. *Kelly,* 89 Mont. 229, 297 Pac. 470.)

Section 111 of Chapter 89, Laws of 1927, known as our ▆ "Banking Act," declares that "no bank shall issue its certificate of deposit for the purpose of borrowing money," and it is suggested that, because of this declaration, such a deposit as was here made cannot be considered a loan. Here, however, the certificate is not issued "for the purpose of borrowing money," but rather as an accommodation to a customer. It would seem that the purpose of the prohibition is to require banks, if they desire to "borrow" money, to execute the instrument evidencing the debt with the authority and in the manner required in executing a corporate note, but does not prohibit the issuance of certificates of deposit in the ordinary course of banking business.

Every general deposit of money in a bank, whether in checking or savings account, on certificate of deposit payable on demand or time, creates the relation of debtor and creditor (*Murphy* v. *Nett,* 51 Mont. 82, 149 Pac. 713, L. R. A. 1915E, 797; *Stankey* v. *Citizens' National Bank,* 64 Mont. 309, 209 Pac. 1054; *Washington County* v. *Stephens,* 46 Idaho, 224, 267 Pac. 225), and is, therefore, in effect a loan to the bank. The best exposition of the reason for the rule last announced is found in the decision in *Frankenfield's Appeal,* appended to the decision in *Baer's Appeal,* supra, where it is said that, had the deposit considered been subject to the check of the depositor, "it is very probable the appellant would not have been liable," but that the deposit was made for a fixed period, and "during that period it was entirely beyond the control of the depositor," and "even if the money be regarded as deposited in the technical sense, it was also loaned, and hence was subject to the qualities and inci-

dents of a loan superadded to those which belonged to it as a deposit.''

The foregoing rigorous rules respecting loans are relaxed in favor of a trustee when it is shown that the situation in which he is placed was brought about by the action, or with the consent, of the *cestui que trust* who is *sui juris*. (*In re Harper's Estate*, 98 Mont. 356, 40 Pac. (2d) 51; *In re Mullen's Estate*, 97 Mont. 144, 33 Pac. (2d) 270; *In re Connolly's Estate*, 79 Mont. 445, 257 Pac. 418.) However, in guardianship matters wherein the ward is a minor or an incompetent, and therefore unable to give direction or consent, the courts should be meticulous in protecting their interests and should apply the rules of liability of the guardian rigorously, and if the controlling facts here were shown to be approximately identical with the facts appearing in the *Kelly Case*, supra, we would unhesitatingly reverse this judgment; but where the reason for a rule fails, the rule should not be applied.

Here the certificate considered was given a maturity date of ''6/12 months''; the ultimate maturity date was one year from the date of issuance, but the holder was given the option of abbreviating the period it was to run and making· the certificate mature at the expiration of six months. (*Citizens' Bank* v. *Jones*, 121 Cal. 30, 53 Pac. 354; *Songer* v. *Peterson*, 114 Kan. 900, 220 Pac. 1060.) After the expiration of the six months' period, it is manifest that such a certificate becomes but a demand certificate on the surrender of which, at any time from six to twelve months after date, the holder could demand and receive the amount mentioned therein, with at least six months' interest thereon. Consequently, had this guardian received information at any time between May 15 and October 22, 1932, that the bank was insolvent or in danger of being closed, he could have withdrawn the funds with the same facility that funds in a checking account could have been withdrawn. It is conceded that the guardian is not chargeable with funds on deposit in the checking account at the time the bank closed, and, as the funds which it is asserted should be charged to him were likewise not ''beyond his control'' at the time the bank closed,

the decision in the *Kelly Case* is not controlling; on the contrary, we are here bound by the decision in the *Pethybridge Case,* cited supra, and *State* v. *Kearns,* 79 Mont. 299, 257 Pac. 1002.

Judgment affirmed.

ASSOCIATE JUSTICES STEWART, ANDERSON AND MORRIS concur.

MR. CHIEF JUSTICE SANDS, being absent on account of illness. takes no part in the foregoing decision.