————o————

No. 7054.

## A. P. PERRIN v. TEXAS & PACIFIC RY. CO.

### Syllabus.

Carriers are not liable for damages to goods in their care occasioned by accidental and uncontrollable events, when they could not have avoided the consequences of these events by the exercise of due diligence.

Appeal from the Civil District Court, Parish of Orleans, No. 111,085, Division "D"; Honorable Porter Parker, Judge. Affirmed.

Prowell & Prowell, for plaintiff and appellant.

Howe, Fenner, Spencer & Cocke, for defendant and appellee.

His Honor, CHARLES F. CLAIBORNE, rendered the opinion and decree of the Court, as follows:

This is a suit for damages for delay in the transportation of cattle and for the negligence of the defendants in

376

not taking proper care of the cattle, by reason of which they suffered and lost in weight and value.

The petitioner alleges that on April 24, 1913, he shipped on board the cars of defendants at Fort Worth, 107 heads of cattle to be carried to New Orleans; that said cattle were all in good condition and properly loaded; that the usual time of transportation was seventy-two hours, or three days, but that, on this occasion, the time consumed was more than one hundred and forty-four hours, or six days; that the defendants were negligent in not properly watering and feeding the cattle while they were in their care; that the cars arrived in New Orleans on April 30, 1913, when the cattle were found to be in a starving and gaunt condition, greatly deteriorated in appearance and value and unfit for marketable purposes; by reason of which petitioner lost $602.37, which he claims.

The defendants deny the allegations of damage, but admit the shipment and the usual time of transportation.

They aver that at the time of the shipment, on April 24, 1913, their main line to New Orleans, owing to the high waters in the Atchafalaya, was out of commission, but that they had made arrangements with the Frisco Railroad to carry their freight and cars via Eunice, Louisiana, within a few hours of the time consumed by themselves; but that on April 26 the line of the Frisco Road was washed out by a crevasse on the Mississippi River; that they then hauled the cars via the Frisco Road to Opelousas, thence via the Southern Pacific Railroad to Grosse Tete, thence to Gouldsborough, New Orleans, by the defendant railroad which delivered the cattle on April 29; that the crevasse on the Frisco was unexpected and unavoidable; that they used due diligence to transport and care for the cattle over these several routes, and that if they suffered any damage

377

it was due exclusively to the inevitable length of time consumed in the transit.

There was judgment for defendants, and plaintiffs have appealed.

There was some question during the argument whether the bill of lading pasted to the petition had been delivered before or after the shipment of the cattle, and whether the suit was based upon the bill of lading or upon the simple contract of carriage.

The bill of lading exempts the carrier from liability for all causes not arising from the negligence of the carrier. As this suit is based upon the alleged negligence of the carrier, the bill of lading offers no defense to the defendants, and their liability remains purely a question of law.

Plaintiff complains that the defendants should have notified him that their road was undergoing an interruption and that they were deviating from their regular route by means of the Frisco at Eunice. But as this deviation extended the time of transit by only a few hours it was immaterial. Besides, there is no evidence that if plaintiff had been so informed that he would not have shipped his cattle by the defendant's route as it was, or that there was any other equally short or shorter route. The carrier's obligation is only to deliver the goods in a reasonable time. 37 *An.*, 468.

The law governing this case is to be found in Article 2754 (2725) of the Civil Code, which reads as follows:

> "Carriers and watermen are liable for the loss or damage of the things entrusted to their care, unless they can prove that such loss or damage has been occasioned by accidental and uncontrollable events." Also C. C. 1933 (1927) § 2.

There is no difference upon this branch of the law between the common law and the Civil Code. Both hold the carrier liable for damages to goods by inexcusable delay, and both exempt him by the happening of uncontrolable events or acts of God. 4 *L.*, 224; 11 *R.*, 27; 47 *A.*, 1455 (1461); 115 *La.*, 6; 132 *La.*, 651.

It is alleged in the petition and admitted in the answer, that under ordinary circumstances the usual time for cattle cars leaving Fort Worth to reach New Orleans is seventy-two hours, or three days. It was therefore the duty of the defendants, under normal circumstances, to have carried plaintiff's cattle to New Orleans in about three days, or within a reasonable time thereafter. 37 *An.*, 468. The evidence shows, however, that they were almost five days in transit. This is not a reasonable time unless they can prove that the delay was "occasioned by accidental and uncontrollable events."

All a plaintiff has to allege in order to recover for loss or damage to goods is the contract of carriage. The burden is upon the carrier to show why and how the goods were lost or damaged by a cause which will exonerate it. 2 *R.*, 403; 5 *R.*, 138; 24 *A.*, 333; 115 *La.*, 1; 132 *La.*, 645 (646); 5 *Ct. App.*, 137; 7 *Ct. App.*, 18 (23).

We think the defendants have met this requirement of the law. The cattle were loaded on the cars on the evening of April 24 at Fort Worth; they left Fort Worth at 8:30 P. M. of the same day and arrived at Marshall at 8:10 the next morning, April 25; from there they arrived at Boyce, Louisiana, at 9:10 P. M. the same day; from there they arrived at Lafayette at 4:30 P. M. April 27.

James Monahan, a conductor for the defendants, thus explains this delay:

"I did have charge of a freight train extra 181, from Boyce, Louisiana, to Lafayette, Louisiana; the cattle had a bad trip on account of the country being flooded by high water, but not because of any rough handling. All trains were delayed on account of washouts. * * * The train in my charge contained these cattle and was delayed at Eunice, Louisiana. This delay was due to the fact that there was a washout on the Texas & Pacific. There was a crevasse at Odenburg, Louisiana, and the Atchafalaya River was overflowing. For this reason the cattle were detoured via the Eunice branch and the Frisco. We arrived at Eunice at 8:35 P. M. (April 26) and reported to the Frisco as ready, and was accepted. We got orders to leave Eunice at 9:55 P. M. and before getting out of the office orders were taken away, which was 10:00 P. M, on account of the Frisco being washed out, and was ordered to tie up at 11:50 P. M. We remained in Eunice until 12:30 P. M. the following day (April 27) and then left over the Frisco to Opelousas over the Southern Pacific to Lafayette, and the cattle were set out for feed and water at 4:30 P. M. in the Southern Pacific pens. The cattle were all in a fair condition except two, which were about dead. We had to go over the Southern Pacific because of the washout on the Frisco."

Charles A. Yoakum, Superintendent of the New Orleans, Texas & Mexico Ry. Co. (Frisco-Gulf Coast Lines) in April, 1913, says:

"The Atchafalaya River, East levee, about three miles north of the Frisco crossing at Krotz Springs, La., broke about midnight of April 24, 1913. * * * The N. O. T. & M. line was out of commission as a result of these overflows until early in the month of June, 1913. * * * There had been a reciprocal arrangement between this Company

and the Texas & Pacific for handling the other's trains, when the occasion demanded, therefore, due to the interruption on the Texas-Pacific lines, trains of their company were being handled by the N. O. T. & M. Co. between Eunice and Livonia.    *    *

    *    About 8 P. M. on this date (April 26, 1913,) Texas & Pacific Extra No. 181 East, containing two carloads of stock, loaded at 10:20 A. M. that day, arrived at Eunice and was offered to the N. O. T. & M. Co. for detour.   The water was rising so rapidly that interruption of the lines was threatened, and to avoid interfering with the work trains and large forces engaged in protection work that I, as Superintendent, felt it unwise to undertake the movement of this train East from Eunice through the overflowed territory, and tied the train up at Eunice at 6 A. M. April 27, 1913, advising the Superintendent of the Texas & Pacific, at New Orleans, and also the Chief Dispatcher of the N. O. T. & M. at DeQuincy, that after the movement of a certain T. & P. freight train west bound no more of their trains could be handled.   *   *   *   There were telegrams exchanged between the Chief Dispatcher of the N. O. T. & M. and the Texas & Pacific Co. in which the latter advised that arrangements had been made with the Southern Pacific to handle their (T. & P.) trains from Opelousas, asking that the N. O. T. & M. Co. continue to move T. & P. trains between Eunice and Opelousas.   So far as my information goes, at the time the N. O. T. & M. line was interrupted, the morning of April 27, 1913, the only road open from Eunice to New Orleans across the Atchafalaya River was the Southern Pacific lines, either by Opelousas or Crowley.   The Texas & Pacific train, X181 East, above referred to, was moved into Opelousas, where it was delivered to the connecting lines at 2:05 P. M. April 27, having left Eunice about 12:05 P. M."

The train moved from Opelousas to Grosse Tete over the Southern Pacific, from there to Addis, where it was returned to the Texas & Pacific, which hauled it to New Orleans.

J. M. Thompson was chief dispatcher of trains at Bunkie. He says:

> "It was necessary to detour all of our trains, both passenger and the most important of freight trains, because the Atchafalaya River was so high that we were afraid at that time to take any chances of the bridge being entirely placed out of commission. Driftwood and the high water and the levee conditions in 1913 justified our convictions and for that reason we opened the draw span and preserved the bridge."

To the same effect is the testimony of N. G. Pearsall, Division Superintendent.

It has been held that a carrier is not liable for loss caused by "accidental and uncontrolable events" which he could neither foretell nor prevent. 6 *M.*, 676; 11 *M.*, 578-579; 12 *La.*, 321; 2 *R.*, 402, 403; 7 *R.*, 201; 2 *A.*, 587; 5 *A.*, 623; 10 *A.*, 280; 11 *A.*, 52; 17 *A.*, 270, 290; 18 *A.*, 1; 21 *A.*, 601; 132 *La.*, 615.

Floods and inundations were considered acts of God in 11*A.*, 428.

But notwithstanding these uncontrolable events, the carrier would still be liable if he could have avoided the consequences of these events by the exercise of proper diligence. 11 *M.*, 579; 11 *A.*, 45; 23 *A.*, 584, 585; 35 *A.*, 119; 132 *La.*, 615, 647, 652; 21 *A.*, 601; *C. C.* 1933 (1927) § 3.

But in that case the burden of proof is upon the owner of the goods to show that the carrier's negligence contributed to the loss. 10 *A.*, 413; 13 *A.*, 270; 14 *A.*, 224; 17 *A.*, 270; 20 *A.*, 303; 23 *A.*, 584; 24 *A.*, 100 (102); 132 *La.*, 615.

Plaintiff has introduced no evidence upon this branch of the case.

On the other hand the defendant has established that the cars moved with all possible despatch under the circumstances without accident, and without avoidable jolts or bumping or delay.

Five witnesses swear that the cattle were unloaded, rested, fed and watered, viz: James Monahan, Conductor; J. M. Thompson, dispatcher of trains at Bunkie; H. D. McKneely, station clerk at Boyce; W. C. Guidry, stockman at Addis, whose duty is to unload, water and feed stock; and H. M. Harrell, transfer clerk at Lafayette.

It is true that in the case of *Bond v. Frost*, 8 *An.*, 297, our Supreme Court has said that the testimony of the servants of a carrier must be received with the allowance implied by their desire to "excuse their masters and themselves." It is also true that the plaintiff testifies: "You can bring a million witnesses here to testify they fed those cattle, but I am satisfied they never fed those cattle." But the plaintiff is more interested than the defendant's witnesses, and their affirmative testimony must prevail over his mere opinion. By reason of the circuitous route followed by the cattle, we may readily concede that they did not receive the regular and complete attention usually required; but that was in a measure unavoidable. The condition of the cattle on arrival was due to this imperfect attention and to the length of their confinement on the

cars. But as both resulted from uncontrolable events, defendants are not responsible for their existence.

Judgment affirmed.

Opinion and decree, May 14th, 1917.

Rehearing refused, June 11th, 1917.