GUIGNON, RESPONDENT, *v.* FIRST NATIONAL BANK OF HELENA ET AL., APPELLANTS.

[No. 1235.]

[Submitted January 9, 1899. Decided February 6, 1899.]

*Banks and Banking — Collections — Insolvency — Agency— Debtor and Creditor—-Following Trust Funds—Interest.*

1. Where a bank receives a draft, with directions to collect, and notify the owner, and its correspondent collects the fund, the mere crediting of the proceeds to the owner on its books, though it has an open account with him, does not change its relation of agent to that of debtor. Hence, the bank having failed, and the fund having been paid by the correspondent to the receiver, the owner might follow the fund.

2. Where a collection made by a bank's correspondent and paid to a receiver subsequently appointed for the bank is followed into the receiver's hands as a trust fund, the owner is not entitled to interest thereon.

*Appeal from District Court, Lewis and Clarke County;*
*H. C. Smith, Judge.*

ACTION by Charles Guignon against the First National Bank.
of Helena and another. There was a judgment for plaintiff,.
and all parties appeal. Affirmed.

Statement of the case by the Justice delivering the opinion..

On August 8, 1896, plaintiff deposited with the First Na-
tional Bank of Helena; Mont. (hereinafter called the ''Na-
tional Bank'') a draft for £400 on the Standard Bank of
South Africa, of London, England, with instructions to col-
lect it, and notify him. At this time, and thereafter until
September 4, 1896, the National Bank was solvent, and doing
a general banking business. Melville, Fickus & Co., bankers,.
of London, England (hereinafter designated as the ''London,
bank''), were the correspondents of the National Bank, and
each house had current accounts with the other on its books.
It was the custom, observed by them, for each bank, upon
making a collection for the other, to credit it, as soon as
made, upon its own books, and notify the other by letter of
its action. The other would thereupon charge the collecting
bank with the amount so collected. On August 8th the
plaintiff's draft was forwarded by the National Bank to the
London bank for collection in the usual course. The London
bank collected the draft on August 21st, and thereupon, on
the same day, notified the National Bank by letter that it had
credited the amount. On September 2d this letter was re-
ceived, and on the same day the National Bank wrote the Lon-
don bank, approving its action, and notifying it that the Na-
tional Bank had charged the amount to the London bank.
This charge was made that day. From August 21st until Sep-
tember 3d the two banks continued business as usual, making
drafts upon each other, but the volume of this business does
not appear, except as hereinafter stated. From August 22st
to September 4th the National bank did a large volume of
general business, foreign and domestic, amounting to from.

$75,000 to $200,000 and upwards daily. On September 4th the National Bank failed to open its doors. On September 15th the defendant Wilson, in charge of it as examiner, called upon the London bank for the credit on its books in favor of the National Bank. This balance, amounting to £475 14s 4d., was paid to Wilson, the receiver, on October 26, 1896. It was larger than the balance shown by the books of the National Bank, because two drafts had been drawn by the National Bank against its London balance three or four days before suspension, and credited on its own books, but had not been paid by the London bank. These, together, amounted to $38.60. At the time the National Bank closed its doors it had on hand in cash $4,343.72. The National Bank paid plaintiff no part of the amount of the draft, nor has he been paid any part of it by any one. The defendant Wilson was subsequently made receiver of the National Bank. On August 8th, and thereafter until the National Bank closed its doors, the plaintiff had an account with it open to check. Demand was made upon Wilson by the plaintiff herein for the amount collected from the London bank, but this demand was denied.

The court below found upon these facts that from and after August 21st until September 4th the London bank had a continuous balance in favor of the National Bank upon its books of more than the amount of plaintiff's draft; that the relation of principal and agent between plaintiff and defendant bank had never been converted into the relation of debtor and creditor; that plaintiff had a preferential claim against the funds in the hands of the receiver because of the payment by the London bank into his hands of the balance on its books; and that he was, therefore, entitled to recover from the receiver the sum of $1,928, the full amount of his claim, without interest, because, if interest were allowed, it would be drawn from the general assets of the bank. From this judgment both parties appeal.

*Wm. Wallace, Jr.*, for Appellants.

It has been uniformly held that when the collection has been so far completed as that it only remains for the collecting bank to pay over the money to him who left the collection, so *instanti* the relation changes and thenceforward is merely that of debtor and creditor. (*Old First National* v. *German-American National*, 155 U. S. 556, 562, foot (39 Co-Op. Ed. 262); *Hallam* v. *Tillinghast*, 52 Pac. R. 329; *Sayles* v. *Cox*, 32 S. W. Rep. 626, 627, left foot; 1 Morse on B. and B. 248; 3 Am. and Eng. Ency. Law (2d Ed.), 819.) Respondent is assumed to have assented to the customary mode of making such a collection, *i. e.* through a correspondent bank. (*First Natl.* v. *Sprague*, 51 N. W. Rep. 846, 848; *Comn. Natl.* v. *Armstrong*, 148 U. S. 60, top, (37 Co-Op. 367, right foot.) If he is not deemed to have assented in the custom, then the act of the First National of Helena, in sending the collection to London and having it, when made, passed to its credit, was a mere conversion accomplished August 21, and rendered it on that date liable in damages only, which would be a general, not a preferred claim. (*Edson* v. *Angell*, 25 N. W. Rep. 307, 308; *Bank* v. *Dowd*, 38 Fed. Rep. 172.) This is especially true where respondent's original instruction was not to collect and credit, but to collect and remit, or pay over and return. (*Bank* v. *Dowd*, 38 Fed. Rep. 173.)

*J. M. Clements*, for Respondent.

We can not calmly view the writhings of the author of appellants' brief in his delirious wrestle with imaginary presumptions; hence we hasten on, to assert respondents' claim for interest, stopping to say that the decree below is based on principles applied to corresponding facts in the following decisive cases: (*Henderson* v. *O' Conor*, 106 Cal. 385; *Com. Bank of Penn.* v. *Armstrong*, 39 Fed. Rep. 684; *Same* v. *Same*, 148 U. S. 50, approved in *Evansville Bank* v. *Ger.-Amer. Bank*, 155 U. S. 556, 564.) The court below should have allowed interest on the amount of its decree, $1,928, from the time demand was made on the receiver, to-wit: November 16, 1896, when the right to recover vested. (*Anderson*

v. *Hulme,* 5 Mont. 295, 298; *National Bank of Commonwealth* v. *Mechanics' Nat. Bank,* 94 U. S. 437; *Chemical Nat. Bank* v. *Bailey,* 5 Federal Cases, 537; *Levi* v. *Nat. Bank of Mo.,* 5 Dill, 104, 111.) Equity follows the law in such cases. (*Crocker* v. *Clements,* 23 Ala. 296, 312.) The receiver represents, not the government, but the bank, its stockholders and creditors. (*Case* v. *Terrell,* 11 Wall. 199, 202.)

BRANTLY, C. J.—The defendants assign as error that the facts found will not support the judgment. The plaintiff insists that he should be allowed interest.

It will be seen from the statement of facts that the relation of principal and agent was established between the plaintiff and the National Bank by the transaction between them on August 8, 1896. The draft was deposited with directions to collect and notify plaintiff, and not for credit. Though the plaintiff at that time had an open account with the bank subject to check, this fact is of no weight in view of the specific directions given by him. Furthermore, the record does not show that the defendant bank ever gave notice to the plaintiff, or credited him with the amount of the collection. In our view of this case, the mere act of crediting the amount to the plaintiff upon the books of the defendant bank would not change the relation of the bank to plaintiff from that of agent to that of debtor until it had actually received the money from the London bank. The plaintiff could still pursue the funds in the hands of the latter so long as he could identify them. The title to the draft did not pass to the National Bank. We conclude also that the fact that its office was that of a mere collecting agent was communicated to its subagent in London, because we must presume, in the absence of proof to the contrary, that it obeyed its instructions, and transmitted the draft for collection as plaintiff's agent. The subagent bank must therefore have understood the nature of the transaction upon receipt of the draft. The right of the plaintiff to have its claim paid as a preferential one out of the fund collected by

the receiver from the London bank therefore depends upon whether the facts in the case show that the £400 collected by the London bank so far retained its identity that it is traceable to the hands of the receiver. No money was remitted to the National Bank by the London bank. Therefore the duties of the latter were not fully discharged up to the time the former closed its doors. The London bank could only receive cash in payment of the draft, and it could only discharge its duty by remitting the cash collected to the National Bank. (*Ward* v. *Smith*, 7 Wall. 452; *Levi* v. *Nat. Bank of Missouri*, 5 Dill. 104, Fed. Cas. No. 8,289; *First Nat. Bank* v. *First Nat. Bank*, 76 Ind. 561; *Henderson* v. *O' Conor*, 106 Cal. 385, 39 Pac. 786; 2 Morse on Banks and Banking, Sec. 568; *Evansville Bank* v. *German-American Bank*, 155 U. S. 556, 15 Sup. Ct. 221.)

It is true that if the National Bank had been indebted to the London bank at the time the collection was made, and credit had been given by the latter to the former in settlement of this indebtedness before the former closed its doors, this would have been equivalent to a transmission of the funds to the National Bank. It would also have been a complete conversion of the money. (*Bank of Pa.* v. *Armstrong*, 148 U. S. 50, 13 Sup. Ct. 533; *Evansville Bank* v. *German-American Bank*, 155 U. S. 556, 15 Sup. Ct. 221; *National Exchange Bank of Dallas* v. *Beal*, 50 Fed. 355; 3 Am. and Eng. Ency. Law (2d Ed.) 818.) But this was not the condition of things in this case. The National Bank was not indebted to the London bank at the time of the collection of the draft. It did not become so indebted at any time afterwards. The collection was made on August 21st, and credited. The National Bank received notice on September 2d, and charged the London bank with it. The National Bank closed its doors on September 4th. At this time there was charged to the London bank £475 14s. 4d., or its equivalent in American money, less two drafts, amounting to $38.60, drawn and credited three or four days before that date. On October 26, 1896, the London bank paid the receiver the full amount of this credit, because

it had not paid the two drafts. Therefore there must have been a continuous balance upon the books of the London bank from August 21st until it was collected by the receiver of $475 14s. 4d.; for it does not appear that any other draft was drawn by either bank upon the other, or that any collection was made by either and charged or credited after August 21st. It therefore appears that the balance in the hands of the London bank must necessarily have been made up of the amount of the collection upon plaintiff's draft with other money theretofore collected. The burden rests upon the plaintiff to establish his claim. (*Bank* v. *Austin*, 48 Fed. 25; *Nonotuck Silk Co.* v. *Flanders* (Wis.), 58 N. W. 383; 5 Thompson on Corporations, Sec. 7104.) In 2 Pomeroy on Equity Jurisprudence, Sec. 1058, the rule is stated:

"No change in the form of the trust property, effected by the trustee, will impede the rights of the beneficial owner to reach it and to compel its transfer, provided it can be identified as a distinct fund, and is not so mingled up with other moneys or property that it can no longer be specifically separated. * * * The existence of a constructive trust, as of a resulting one, must be proved by clear, unequivocal evidence."

The facts found by the court below show that the plaintiff had successfully met the obligation cast upon him to show that his property, as a specific fund, passed into the hands of the receiver. The receiver has in his hands the money thus belonging to the plaintiff.

The court below rendered judgment for the full amount of the sum collected, but allowed no interest. This we think correct. We have no statutory provision strictly applicable to such cases, and we think it inequitable that the assets in the hands of the receiver to which the general creditors must resort should be taken to pay interest on the sum so withheld by the receiver until he could be advised as to his duty in the premises. The discretion of the lower court was wisely exercised in this particular, and we shall not interfere.

The judgment will therefore be affirmed.          *Affirmed.*

HUNT and PIGOTT, JJ., concur.

PER CURIAM.—After the foregoing opinion was handed down, the Court, not being fully satisfied as to the conclusion reached touching the question of interest, of its own motion suggested to counsel that an application be made for a rehearing upon this question. The *remittitur* was ordered withheld pending the action of counsel upon this suggestion. Subsequently the Court was advised that a settlement of the case had been reached, and that no rehearing would be applied for. The conclusions reached will therefore be allowed to stand.

