STATE EX REL. KELLY, ATTORNEY GENERAL, APPELLANT, *v.*
FARMERS' STATE BANK OF BRIDGER, RESPONDENT.

(No. 3,885.)

(Submitted February 28, 1918.  Decided March 30, 1918.)

[172 Pac. 130.]

*Banks and Banking — Insolvency — Preferred Claims — Trust
Funds—Recovery Back—Identification—Collection of Com-
mercial Paper—Conversion.*

Agency—Trust Funds—Recovery Back—Identification.
  1.  The owner of property (including money) intrusted to one who
  occupies a fiduciary relation to him, as, for instance his agent, may
  follow and retake it from the agent or anyone in privity with him
  who is not a *bona fide* holder for value, whether it remains in its
  original form or in a different or substituted form, provided it can
  be identified as the same property or the product or proceeds of it;
  and if the property be money, it is immaterial that it has been
  mingled with private moneys of the agent, or his privy, who has
  knowledge of the source from which it has been obtained.
    [As to reclaiming funds of trust deposited in bank which has
  become insolvent, see note in 86 Am. St. Rep. 801.]
Same—Insolvent Banks—Creditors—Who are not.
  2.  The owners of a certificate of deposit sent by. them to a bank
  with instructions to collect the amount of it and upon collection to
  place it to their credit did not become its creditors either by the
  unauthorized act of the bank in placing the amount thereof to their
  credit without collection having been made, or by its omission to
  charge the account after failure to collect, so as to wipe out the
  apparent credit.
Same—Banks—Agency—Collection of Commercial Paper.
  3.  A bank to which a certificate of deposit had been sent with in-
  structions to collect and, if successful, to place the amount of it to
  the credit of the owners, sustained the relation of agent to them,
  with authority to change that relation to that of debtor on the
  condition that collection should be made; failure to collect made
  the bank a bailee of the owners, with no other authority than to
  return the certificate to them.
Same—Banks—When Guilty of Conversion.
  4.  A bank which without authority discounted a certificate of
  deposit left for collection was guilty of a willful conversion of it
  to its own use.
Same—Insolvent Banks—Preferred Claims.
  5.  Since the owners of the certificate of deposit *supra* did not be-
  come creditors of the bank, and the bank sustained to them the
  relation of agent, they could follow and retake the money realized
  by the bank through its wrongful act in discounting it, and a por-
  tion of which found its way into the hands of the receiver, to the

Authorities discussing the question as to trust in proceeds of collection
by insolvent bank where proceeds have been mixed with its own funds are
collated in a note in 32 L. R. A. 719.

extent to which they could identify it, and to that amount were entitled to a preference over the general creditors of the insolvent bank.

*Appeals from District Court, Carbon County; Geo. W. Pierson, Judge.*

In an Action by the State of Montana on the relation of D. M. Kelly, Attorney General, against the Farmers' State Bank of Bridger, James S. Tebbs and C. W. Taggart filed their petition asking that H. B. Miller, receiver of said bank, be required to recognize a claim against the bank as a preferred one. From a judgment against them and from an order denying their motion for a new trial, petitioners appeal. Reversed and remanded.

Cause submitted on briefs of Counsel.

*Mr. F. B. Reynolds,* for Appellant.

It is submitted that a transaction such as is here involved, *i. e.,* a deposit for collection and credit with credit entered upon the books of the bank, may or may not constitute a general deposit; that neither the form of the indorsement upon the item nor the entry of credit upon the books of the bank is controlling; but that the effect of the transaction is to be determined by the mutual understanding and intention of the parties, express or implied; and that the facts in this case show a mutual intention to treat the certificate of deposit as a collection item rather than cash. (3 R. C. L., "Banks and Banking," secs. 150–152; *Balbach* v. *Frelinghuysen,* 15 Fed. 675; *Hilsinger* v. *Trickett,* 86 Ohio St. 286, Ann. Cas. 1913D, 421, 99 N. E. 305; *Morris-Miller Co.* v. *Pressentin,* 63 Wash. 74, 114 Pac. 912; *Fayette National Bank* v. *Summers,* 105 Va. 689, 7 L. R. A. (n. s.) 694, 54 S. E. 862; *Bailie* v. *Augusta Savings Bank,* 95 Ga. 277, 51 Am. St. Rep. 74, 21 S. E. 717; *Tyson* v. *Western Nat. Bank,* 77 Md. 412, 23 L. R. A. 161, 26 Atl. 520; *Armour Packing Co.* v. *Davis,* 118 N. C. 548, 24 S. E. 365; *National Gold Bank & Trust Co.* v. *McDonald,* 51 Cal. 64, 21 Am. Rep. 697;

*Butchers & Drovers' Nat. Bank* v. *Hubbell*, 117 N. Y. 384, 15 Am. St. Rep. 515, 7 L. R. A. 852, 22 N. E. 1031; *Armstrong* v. *National Bank of Boyertown*, 90 Ky. 431, 12 Ky. Law Rep. 393, 9 L. R. A. 553, 14 ˙S. W. 411; *Perth Amboy Gaslight Co.* v. *Middlesex County Bank*, 60 N. J. Eq. 84, 91, 45 Atl. 704.)

As the bank did not give notice to Tebbs and Taggart of the entry of credit upon the bank's books, such entry, being prior to collection, did not change the relation of the bank to petitioners from that of agent to that of debtor. (*Guignon* v. *First Nat. Bank*, 22 Mont. 140, 55 Pac. 1051; 5 Cyc. 498.)

The relation between Tebbs and Taggart and the bank was that of bailor and bailee; hence the cash assets which came into the hands of the receiver, to the extent of $3,000, are impressed with a trust in favor of petitioners. (3 R. C. L., "Banks and Banking," sec. 268; *Guignon* v. *First Nat. Bank, supra; Kansas State Bank* v. *First State Bank*, 62 Kan. 788, 64 Pac. 634; *State* v. *Bank of Commerce*, 61 Neb. 181, 52 L. R. A. 858, 85 N. W. 43; *Plano Mfg. Co.* v. *Auld*, 14 S. D. 512, 86 Am. St. Rep. 769, 86 N. W. 21; *Capital Nat. Bank* v. *Coldwater Nat. Bank*, 49 Neb. 786, 59 Am. St. Rep. 572, 69 N. W. 115; *Western German Bank* v. *Norvell*, 134 Fed. 724, 69 C. C. A. 330; *Butler* v. *Western German Bank*, 159 Fed. 116, 86 C. C. A. 306.)

That the proceeds of plaintiffs' certificate ˙of deposit were mingled with the funds of the bank and went to enhance the apparent value of the assets of the bank is sufficient identification. (3 R. C. L., "Banks and Banking," sec. 268; *Yellowstone County* v. *First Trust & Savings Bank*, 46 Mont. 439, 128 Pac. 596; *Western German Bank* v. *Norvell, supra; Richardson* v. *New Orleans Debenture Redemption Co.*, 102 Fed. 780, 52 L. R. A. 67, 42 C. C. A. 619.)

*Messrs. Nichols & Wilson*, for Respondent.

The first question presented is whether the title to the certificate in question and to the proceeds realized therefrom by discounting to the Helena bank passed to the Bridger bank. The following citations support the conclusion that it did pass: (*Fourth Nat. Bank* v. *Mayer*, 89 Ga. 108, 14 S. E. 891; *Pacific*

*Bank* v. *Mitchell,* 9 Met. (50 Mass.) 297; *United States Nat. Bank* v. *Greer,* 53 Neb. 67, 41 L. R. A. 439, 73 N. W. 266; *Perth Amboy Gaslight Co.* v. *Middlesex County Bank,* 60 N. J. Eq. 84, 45 Atl. 704; *Williams* v. *Cox,* 97 Tenn. 555, 37 S. W. 282.)

Even though it should be held that the title to this certificate did not pass to the bank and that the conduct of Trumbo, the cashier, in selling the certificate and in leading the claimants to believe that the certificate was still subject to their order, constituted a fraud and that thereby the funds became trust funds, we yet maintain that the claimants are not entitled to an order of preference for the full amount. The bank closed its doors on March 26, and the balance then remaining in the Helena bank to the credit of the Bridger bank did not exceed $1,000. If a trust is found to exist by reason of the conduct of Trumbo, then the rule should be that the claimants are entitled to a preference payment to the extent only that their claim bears to all claims of like character existing at the time the bank closed, and which have been proved and allowed as such since the appointment of the receiver. Justice can only be done by treating all the preferred claims as on the same basis and prorating the funds available among all creditors of that class. We have found no authority concerning this identical question which we last present for the consideration of the court, but it occurs to us that carrying out the theory upon which preferences are allowed, the rule above stated must be adopted in matters of this kind as the only fair one to both classes of creditors.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

On March 26, 1915, the action in which this proceeding is entitled was brought by the attorney general of the state in the district court of Carbon county to have the Farmers' State Bank at Bridger (hereafter referred to as the bank) declared insolvent and to obtain the appointment of a receiver to take charge of its assets and wind up its affairs. H. B. Miller, the respondent herein, was appointed receiver and has been acting as such until the present time. On November 15, 1915, James S. Tebbs

and C. W. Taggart, the appellants herein, doing business as copartners under the firm name of Tebbs & Taggart, filed their petition in the action, asking that the receiver be required to recognize as a preferred claim the sum of $3,000, in which amount the bank was indebted to them, and to obtain an order directing him to pay the same in full out of the assets of the bank, together with accrued interest. The receiver joined issue by answer upon the allegations of the petition. A hearing by the court resulted in an order denying the relief demanded and directing the receiver to recognize the debt due to the appellants as a general claim and to make payment thereof accordingly. The proceeding comes before this court on appeals from this order and from an order denying appellants' motion for a new trial.

It is open to question whether the method of procedure adopted by the appellants to secure the relief sought was not in some respects inappropriate. There is grave doubt whether the district court could entertain a motion for a new trial and whether an appeal lies from the order disposing of the motion. Counsel for the respondent having by their silence assumed that the procedure was in all respects appropriate and that both appeals are properly before this court, we refrain from considering and deciding any question in this behalf, and proceed at once to answer the single inquiry presented, *viz.:* Are the appellants entitled to the relief demanded?

There is no substantial controversy as to the facts: During the year 1915 the appellants kept moneys on deposit with the bank subject to their check. They also borrowed moneys from the bank from time to time, as the exigencies of their business required. On November 12 they mailed to the bank a certificate of deposit for $3,000, issued by the Central State Bank, at White Sulphur Springs, Montana, on March 6, due four months after date, in favor of E. J. Anderson, and indorsed by him to the appellants, with these instructions: "If you can collect same credit our account with the $3,000 and oblige." Mr. Trumbo, the cashier, at once acknowledged receipt of the certificate, stating that it had been "entered for collection." In fact,

appellants' checking account had been credited with the amount of the certificate as cash. Of this appellants knew nothing until they received a letter from Mr. Trumbo on March 22, in which he wrote them as follows: "We are in receipt of advice from our correspondent that certificate for $3,000 payment was refused on as not being due, and your account has been charged with that amount. We could give you credit on your note for the amount of the certificate. Awaiting your early reply regarding this matter, we remain," *etc.* On March 13, Mr. Trumbo had forwarded the certificate for collection to the Union Bank & Trust Company, at Helena (hereafter referred to as the Helena bank). On March 20 the Helena bank wrote Mr. Trumbo as follows: "We received from you the other day a certificate of $3,000, issued by the Central State Bank of White Sulphur Springs, dated March 6 and due four months after date. This has now been returned to us from White Sulphur Springs, as they refuse to pay it until maturity and we have accordingly charged the amount back to your account. It occurs to us that possibly you would prefer to have us carry this for you on an 8% basis and if so, will be glad to do this, otherwise will return it to you." In response to this letter Mr. Trumbo wrote on March 22: "We are in receipt of yours of March 20 relative to certificate of deposit for $3,000. We will be glad to let you have this at the rate of 8% mentioned in your letter. Trusting to receive immediate credit for same, we remain," *etc.* On the following day the Helena bank wrote to Mr. Trumbo: "As requested in yours of the 22, we have credited your account $3,000 for the White Sulphur Springs certificate and have charged your account for the discount on same at 4% for three months and a half, $35." The record does not disclose the fact, but we may presume from the form in which the offer of the Helena bank was made and the result of the negotiations, that the certificate bore interest at the rate of 4%. On March 24 after the appellants had received from Mr. Trumbo the latter of March 22, Mr. Taggart went to Bridger intending to obtain the certificate. He was told by Mr. Trumbo that the bank's correspondent at Helena had kept it there until it should

be advised by the bank what disposition to make of it.   There was some conversation between them in regard to a loan by the bank to appellants and also a proposal by the bank to credit appellants' note then held by it, but this conversation resulted in nothing definite.   The note referred to was in the sum of $2,000.   At the time this conversation occurred it had been negotiated by the bank and was in the hands of the Helena bank. This the appellants did not ascertain until they were called upon by the Helena bank to make payment.   Mr. Taggart at that time signified his intention to take up the matter of the loan with Mr. Tebbs upon his return home and inform Mr. Trumbo by telephone later what the appellants would do, but nothing further was done before the bank closed.   The appellants did not know until after the bank had closed that the amount of the certificate had not been charged back to their account; nor did they know that the certificate had been discounted by the Helena bank.   When the receiver took charge of the bank he found cash on hand and on deposit in correspondent banks amounting to between $3,000 and $3,600.   The amount in the bank was $1,200.   There was on deposit in the Helena bank a balance of about $900.   The balance of the total was on deposit in other correspondent banks.   What the exact amount of this balance was cannot be stated, because the accounts of the bank with the Helena bank were in confusion, and at the time of the hearing of the petition the receiver had not been able to reach a final adjustment of them.   When the Helena bank discounted the certificate it gave the bank credit for the proceeds, $2,965.   The bank was at that time indebted to the Helena bank.   This accounts for the comparatively small balance due it from the Helena bank.   There were no other transactions between the two banks before the receiver took charge.

It is the rule, recognized by the courts generally, that the [1] owner of property intrusted to one who occupies a fiduciary relation with him, such as his agent, may follow and retake it from the agent or anyone in privity with him, not a *bona fide* holder for value, whether it remains in its original

form or in a different or substituted form, provided it can be identified as the same property or the product or proceeds of it. The rule extends to and includes moneys as well as other property, even though it appears *prima facie* that they have been mingled with private moneys of the agent, or his privy, who has knowledge of the source from which they have been obtained. In such cases the entire fund in the hands of the agent, or his privy, is impressed with a trust in favor of the owner to the extent to which the moneys have become a part of it; and the burden is upon the agent, or his privy, to rebut the *prima facie* case made by the owner, or to separate and distinguish his own moneys from those composing the entire fund. (*Yellowstone County* v. *First Trust & Sav. Bank*, 46 Mont. 439, 128 Pac. 596.) This court has heretofore declared the right of a creditor of an insolvent bank in the hands of a receiver to have preference over the general creditors in the payment of his claim, the facts disclosing that the bank bore to him the relation of agent or bailee in the transaction out of which the claim grew. (*Guignon* v. *First Nat. Bank*, 22 Mont. 140, 55 Pac. 1051, 1097; *Yellowstone County* v. *First Trust & Sav. Bank, supra.*)

Looking to the instructions which were transmitted by [2, 3] appellants to the bank with the certificate, the bank became, in the first instance, merely their agent to collect, with the authority to change this relation to that of debtor on the express condition, however, that collection should be made of the amount called for by it. Since the certificate was not due, they could not expect, nor did they intend, to be credited with its value as cash until it had been paid. Hence the authority to credit them was made conditional until payment should be made. It could not have occupied any other relation to appellants than as their agent until the condition was fulfilled. Upon its failure to collect, its conditional authority lapsed and it became a bailee of the appellants, without any authority other than to return the certificate to them. The entry of the credit upon the books of the bank without the authority or assent of the appellants could not make them its creditors; nor could the omission to charge the account after failure to collect, so as to

wipe out the apparent credit, have a like result. The bank, therefore, had no authority to discount the certificate to the [4] Helena bank. In doing so it became guilty of a willful conversion of it to its own use. It is clear, then, that the appellants, never having become creditors of the bank, were entitled to follow and retake the certificate or its proceeds, so long as they could find the one or identify the other. Instead of [5] pursuing the certificate and recovering it or its full value from the Helena bank by appropriate action, which, upon the facts disclosed in this record, they had a perfect right to do, they chose to pursue and take the proceeds. They must, therefore, in this proceeding be limited in their preferential right to the amount of the proceeds shown to have found its way into the hands of the respondent. Upon the question whether they may still bring their action against the Helena bank, we express no opinion, because it does not arise in this proceeding. The balance in the Helena bank was undoubtedly a part of the proceeds of the certificate, for, since it does not appear that any other transactions took place between the bank and the Helena bank after March 22, and the credit given to the bank on that date by the Helena bank was for the proceeds of the certificate only, the balance is fully identified as a part of these proceeds. Appellants are entitled to preferential payment in this amount. They are not entitled to preferential payment, however, out of the other balances, as they do not appear to have been derived in any measure from the proceeds of the certificate. They belong to the general assets of the bank, to be distributed among the general creditors.

The orders appealed from are set aside and the proceeding is remanded to the district court, with directions to order the receiver to recognize appellants' right to preferential payment to the amount of the balance received by him from the Helena bank.

*Reversed and remanded.*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.