STATE EX REL. RANKIN, ATTORNEY GENERAL, PLAINTIFF, *v.*
THE BANKING CORPORATION OF MONTANA, DE-
FENDANT.

GRAY, RECEIVER, RESPONDENT, *v.* FEDERAL RESERVE
BANK OF MINNEAPOLIS, DEFENDANT; STANTON
TRUST & SAVINGS BANK, INTERVENER, APPELLANT.

(No. 5,762.)

(Submitted October 31, 1925. Decided November 13, 1925.)

[241 Pac. 626.]

*Banks and Banking—Insolvency—Receivers—Checks Sent for*
*Collection—Insolvency Before Collection—Relation of Parties*
*That of Principal and Agent, When—Custom—Presumption*
*of Continuance—Trust Fund Held by Receiver—Interest—*
*When not Allowable.*

Banks and Banking—Receivers — Relation to Bank — Title to Remit-
tances Sent for Collection—Evidence—Exhibits—Letters—Admissi-
bility.

1.   The receiver of a bank occupies no higher position with refer-
ence to the debtors and creditors of the bank than did the bank
itself before his appointment, and in an action by him to recover
moneys from the Federal Reserve Bank, which disclaimed any in-
terest therein, a third bank which had theretofore been a corre-
spondent of the insolvent bank and interpleaded as claimant
was entitled to interpose any defense it might have interposed
in an action between that bank and it before it became insolvent,
and correspondence passing between them could properly be con-
sidered in determining the ownership as between it and the re-
ceiver.

Same—Remittances by Checks and Drafts—When Relation of Debtor
and Creditor Created.

2.   Where remittances by checks and drafts were treated by the
receiving bank as cash and accepted for credit and credit ex-
tended, interest figured on the gross balance and the remitting
bank immediately authorized to draw upon such balance, title to
the remittances immediately passed to the receiving bank, and the
relation of debtor and creditor arose between them from each of
such transactions.

Same—Checks and Drafts Carrying Unrestricted Indorsements—Passing
of Title to Receiving Bank—Rule not Absolute.

3.   The rule that where checks and drafts carrying unrestricted in-
dorsements are transmitted from one bank to another title to the

2.   Title to checks indorsed in blank and forwarded for collection,
see notes in 2 **Ann. Cas.** 117; 5 **Ann. Cas.** 818.

paper passes to the receiving bank is not absolute but only *prima facie*, the question whether title passes being dependent upon the intention of the parties and one of fact rather than of law.

Same — Remitting Bank not Entitled to Draw upon Remittances by Check Until Collection—Effect of Rule on Relation of Parties.
4.   Where the right of a bank making remittances to its correspondent to draw upon them had previously been denied it before actual collection, it is persuasive evidence in an action against the receiver of the correspondent bank to establish title to checks sent for collection and not collected before the closing of the latter, of an intention that title should not pass until collection had been made, and the relation between the banks was that of principal and agent.

Same—Rule That Bank Remitting Checks not Entitled to Credit Until Collection Presumed to have Continued, When.
5.   Where a bank had for some two years refused to credit checks and drafts to a remitting bank until after collection thereof, the presumption obtains, in the absence of a showing to the contrary, that the method adopted continued at the time it transmitted certain paper to it which was not received until the receiving bank had closed its doors, and therefore the relationship of debtor and creditor did not then exist between them, and title to the funds collected remained in the remitting bank.

Same—Insolvency—Claimant Creditor not Entitled to Interest on Trust Fund Held by Receiver by Order of Court.
6.   Where the receiver of an insolvent bank had been directed by order of court to hold moneys collected upon checks and drafts not received for collection until after the close of the bank, in a special fund until the right of the claimant thereto could be determined, the successful claimant was not entitled to interest thereon while in the receiver's hands.

---

Banks and Banking, 7 C. J., sec. 245, p. 597, n. 32, 33; p. 598, n. 33; sec. 246, p. 599, n. 43; sec. 246, p. 600, n. 46 New; sec. 256, p. 605, n. 77 New; sec. 282, p. 616, n. 68; sec. 314, p. 635, n. 27, 28; sec. 326, p. 642, n. 2; sec. 327, p. 642, n. 5; sec. 502, p. 735, n. 69; sec. 507, p. 737, n. 5; sec. 532, p. 745, n. 99 New.
Evidence, 22 C. J., sec. 28, p. 86, n. 75; sec. 29, p. 89, n. 7, 18 New.

*Appeal from District Court, Lewis and Clark County; W. H. Poorman, Judge.*

RECEIVERSHIP PROCEEDINGS by the State of Montana, on the relation of Wellington D. Rankin, Attorney General, against the Banking Corporation of Montana, in which Claude C. Gray was appointed receiver.   Suit by Claud C. Gray, as receiver of the Banking Corporation of Montana, against the Federal Reserve Bank of Minneapolis, in which the Stanton

---

5.   See 3 R. C. L. 636.

Trust & Savings Bank was substituted as intervener. From an order to allow the claim of the intervener as a general creditor's claim merely, the interpleader appeals. Reserved and remanded, with directions.

*Mr. E. G. Toomey* and *Mr. George H. Stanton,* for Appellant, submitted a brief; *Mr. Toomey* argued the cause orally.

"The insolvency of a bank at once terminates its authority to proceed further, and if collections are afterward made, or those previously undertaken are completed, the proceeds are held in trust for the owners." (5 Cyc. 512; *Exchange Bank* v. *Sutton Bank,* 78 Md. 577, 23 L. R. A. 173, 28 Atl. 563; *Manufacturers' Nat. Bank* v. *Continental Bank,* 148 Mass. 553, 12 Am. St. Rep. 598, 2 L. R. A. 699, 20 N. E. 193; *Middlesex County* v. *State Bank,* 32 N. J. Eq. 467; *Jones* v. *Kilbreth,* 49 Ohio, 401, 31 N. E. 346; *Alexandria First Nat. Bank* v. *Payne,* 85 Va. 890, 3 L. R. A. 284, 9 S. E. 153; *Merchants' etc. Bank* v. *Austin,* 48 Fed. 25; 7 Corpus Juris, sec. 242, p. 597.) "Where the bank is insolvent at the time the paper is deposited therein, it acquires no title to such paper no matter how it may be indorsed." (7 Corpus Juris, sec. 254.)

Paper deposited on agreement that it shall not be drawn against until time enough has elapsed for its collection does not become the bank's property. (*Importers' Nat. Bank* v. *Peters,* 123 N. Y. 272, 25 N. E. 319.) "It is not necessary, to preserve title in the depositor, expressly to indorse 'For collection.' The title to paper does not pass to a bank to which it is delivered for collection, although indorsed in blank or by unrestricted indorsement." (*Richardson* v. *New Orleans Coffee Co.,* 102 Fed. 785, 43 C. C. A. 583; *Claflin* v. *Wilson,* 51 Iowa, 15, 50 N. W. 578; *Prescott* v. *Leonard,* 32 Kan. 142, 4 Pac. 172; *Re State Bank,* 56 Minn. 119, 45 Am. St. Rep. 454, 57 N. W. 336; *Hackett* v. *Reynolds,* 114 Pa. 328, 6 Atl. 689; *Morris-Miller Co.* v. *Von Pressentin,* 63 Wash. 74, 114 Pac. 912.) "Where the paper is deposited for collection,

title does not pass even though it is intended for credit when collected.'' (*Armstrong* v. *National Bank,* 90 Ky. 431, 9 L. R. A. 553, 14 S. W. 411; *Stones River Nat. Bank* v. *Lerman Mill Co.,* 9 Ala. App. 322, 63 South. 776; *Tyson* v. *Western Nat. Bank,* 77 Md. 412, 23 L. R. A. 161, 26 Atl. 520; *National Park Bank* v. *Seaboard Bank,* 114 N. Y. 28, 11 Am. St. Rep. 612, 20 N. E. 632.)

The legal import of an indorsement, ''for deposit to the credit of'' the depositor is that ownership of the bill is retained by the depositor. (*Freeman* v. *Exchange Bank,* 87 Ga. 45, 13 S. E. 160.) ''An agreement to charge back in case the paper should be returned is a controlling consideration. It is irreconcilable with absolute ownership on the part of the bank.'' (*Barton Implement Co.* v. *Mercantile Nat. Bank,* 128 Tenn. 320, 160 S. W. 848; *Armour Packing Co.* v. *Davis,* 118 N. C. 548, 24 S. E. 365.) In New Jersey it is held that as a condition precedent to the passing of title to paper, the depositor must be given the right to draw—a right which he has exercised by actually drawing. (*Perth Amboy Gas Light Co.* v. *Middlesex County Bank,* 60 N. J. Eq. 84, 45 Atl. 704; *Titus* v. *Mechanics' Nat. Bank,* 35 N. J. L. 588.) This is the view taken by the federal circuit court for the district of New Jersey. (*Balbach* v. *Frelinghuysen,* 15 Fed. 675.)

*Messrs. Stewart & Brown,* for Respondent, submitted a brief; *Mr. John G. Brown* argued the cause orally.

According to the great majority of cases, where there is no definite undertaking between the depositor and the bank as to the ownership of the paper, but the paper is indorsed by an unrestricted indorsement and deposited in the usual course of business with the bank, which gives credit to the depositor for the amount thereof, with right to draw thereon, title passes to the bank. (*Burton* v. *United States,* 196 U. S. 283, 49 L. Ed. 482, 25 Sup. Ct. Rep. 243 [see, also, Rose's U. S. Notes]; *Security Nat. Bank* v. *Old National,* 241 Fed. 1, 154 C. C. A. 1; *Farmers' State Bank* v. *First State Bank,*

142 Ark. 331, 218 S. W. 847; *Brown* v. *Yukon Nat. Bank,*
138 Ark. 210, 209 S. W. 734; *Plumas etc. Bank* v. *Bank,*
165 Cal. 126, 47 L. R. A. (n. s.) 552, 131 Pac. 360; *Grain Co.*
v. *Merchants' etc. Bank,* 166 Cal. 203, 135 Pac. 958; *Gonyer*
v. *Williams,* 168 Cal. 452, 143 Pac. 736; *Dirnfeld* v. *14th Street
Sav. Bank,* 37 App. D. C. 11; *Doppelt* v. *National Bank,* 175
Ill. 432, 51 N. E. 753; *Downey* v. *National Ex. Bank,* 52 Ind.
App. 672, 96 N. E. 403; *Noble* v. *Doughten,* 72 Kan. 336,
3 L. R. A (n. s.) 1167, 83 Pac. 1048; *Denton Nat. Bank* v.
*Kenney,* 116 Md. 24, 81 Atl. 227; *Taft* v. *Quinsigamond Bank,*
172 Mass. 363, 52 N. E. 387; *Brusegaard* v. *Ueland* (Minn.),
75 N. W. 228; *Renfrow Co.* v. *Northrup Co.* (Mo. App.), 222
S. W. 487; *National Bank* v. *Bossemeyer,* 101 Neb. 96, L. R. A.
1917E, 374, 162 N. W. 503; *Scott* v. *Ocean Bank,* 23 N. Y.
289; *Howe* v. *Akron Bank,* 16 Ohio C. C. (n. s.) 320; *Friberg*
v. *Cox,* 97 Tenn. 550, 37 S. W. 283; *Chrisman* v. *Lumberman's
Bank* (Tex. Civ. App.), 163 S. W. 651; *Walker* v. *Ranlett
Co.,* 89 Vt. 71, 93 Atl. 1054; *Fourth etc. Bank* v. *Bragg,*
127 Va. 47, 11 A. L. R. 1034, 102 S. E. 649; *Vickers* v. *Machinery etc. Co.,* 111 Wash. 576, 191 Pac. 869; *Aebi* v. *Bank,*
124 Wis. 73, 109 Am. St. Rep. 925, 68 L. R. A. 964, 102
N. E. 329; *Morris* v. *First Bank,* 201 Pa. 160, 50 Atl. 1000;
*First Bank* v. *Dickson,* 6 Dak. 301, 50 N. W. 124.)

"Where checks or drafts are indorsed and deposited and
are accepted as cash they become the property of the bank,
and the bank becomes a debtor of the depositor in the amount
of such check even though it is understood that the bank has
the right to charge back the amount if the paper deposited
proves uncollectible." · (7 C. J. 635; *Brusegaard* v. *Ueland,*
72 Minn. 283, 75 N. W. 228; *Walker* v. *Ranlett Co.,* 89
Vt. 71, 93 Atl. 1054; *Ditch* v. *Western Nat. Bank,* 79 Md.
192, 29 Atl. 72; *Noble* v. *Doughten,* 72 Kan. 336, 3 L. R. A.
(n. s.) 1167, 83 Pac. 1048; *Hendley* v. *Globe Refinery Co.,*
106 Mo. App. 20, 79 S. W. 1163; *Burrton State Bank* v.
*Peasemoore Mill Co.,* 163 Mo. App. 135, 145 S. W. 508.)

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The Banking Corporation of Montana, being insolvent, failed to open its doors for business on the morning of the second day of May, 1923. On application of the attorney general, Claude C. Gray was duly appointed receiver and entered upon the discharge of his duties. On October 11, 1923, the receiver brought suit against the Federal Reserve Bank of Minneapolis to recover the sum of $8,574.88, which he alleged was the property of the insolvent estate and was wrongfully withheld from him. The Federal Reserve Bank disclaimed any interest in the money and asked that the Stanton Bank, as claimant, be substituted as defendant. The court ordered the substitution and directed the Federal Bank to pay the amount over to the receiver, to be held by him in a special fund pending the outcome of the action. Thereupon the Stanton Bank, by complaint in interpleader and answer, set up its claim to the money, which claim was denied by the receiver.

After issue was joined, the receiver filed in the district court of Lewis and Clark county his petition No. 49, for an order requiring all creditors of the Banking Corporation claiming priority or preference to come into court and prove their claims. The order was duly made, and thereafter the interpleader action was consolidated with the receivership proceeding.

After a full hearing the court held that the amount in dispute was the property of the insolvent estate, and ordered the receiver to allow the claim of the Stanton Bank for that amount merely as a general creditor's claim. From this order the Stanton Bank has appealed. The only error assigned is predicated upon the action of the court in making such order.

The facts disclosed on the hearing are substantially as follows: From some time prior to April 25, 1921, up to the time it closed, the Banking Corporation had been the Helena

correspondent of the Stanton Bank, and the latter made daily remittances to it by "cash letters," the printed heading of which contained the direction: "We inclose for $\left\{\begin{array}{l}\text{collection}\\\text{credit}\end{array}\right.$ items as follows:" All checks and drafts listed therein carried an unrestricted indorsement. On no one of the cash letters was either the word "collection" or the word "credit" stricken. The last cash letter mailed bears date April 30, 1923, and contained items totaling $29,305.07. Throughout the entire period of their business relations, the Stanton Bank had, immediately on mailing a remittance, charged the total of the items therein contained to the Banking Corporation, and, on receipt thereof, the Banking Corporation had credited on its ledger the full amount to the Stanton Bank. Under an agreement between the two banks, the Banking Corporation paid to the Stanton Bank interest on daily balances.

At some time prior to April 25, 1921, the Banking Corporation became a "member bank" of the Federal Reserve Bank of Minneapolis and thereafter sent its paper for collection to the Helena branch of that institution. The system adopted by the Federal Reserve Bank was to accept all checks and drafts on banks outside of Helena for collection and enter them in a "suspense account," where they were held for a certain number of days; the time varying according to the distance to or the accessibility of such bank. It had prepared a schedule of the time necessary for collection at each point; the time given in the schedule was noted opposite each item entered in the suspense account, and on the expiration of such time the item was transferred to the credit account of the member bank from which the item was received. The records of the Federal Bank also showed, by code number given by the American Banking Association, the bank from which an item was received by the forwarding member bank.

On April 25, 1921, George L. Ramsey, as president of the Banking Corporation, wrote the Stanton Bank, inclosing a charge slip, instead of a credit slip for interest, explaining that the same was on "an overdraft on available funds."

He then explained the system under which the Federal Reserve Bank handled items, and continued: "The result is that we have to settle our clearings with them, not in exchange on Chicago or New York, but in a check on themselves which is charged to our balance of actual funds with them (we have two accounts, one of actual funds to which is credited from day to day the maturing items we have deposited with them, and which they carry on suspense all the way from one to eight days), and therefore if we were to undertake to recognize everything received from our correspondents, as cash, we would soon have a vast sum in the air, against which we would have to be finding actual real cash to settle with the Federal Reserve—it is bound to be a considerable burden, the [but?] with the co-operation of the bank correspondents, it can be handled successfully, I think.

"For your clearer understanding of the situation as it has been encountered, I send you herewith our office interest statement * * * from which you will observe that, according to our ledger you have carried a substantial balance with us right along (the 'gross balance' column) and there is no overdraft so far as the account in the ledger is concerned—the use of the word overdraft occurs as regards the difference between actual funds and funds in process of collection. * * * .

"Please be sure to return to us our office copy of the interest calculation. I feel sure that you will appreciate this point brought about by changing conditions in banking routine through the Federal Reserve Bank and that you will be willing to co-operate with us as have other correspondents.

"I know that you will handle your account in such a way that you will not expect us to advance funds on items in process of collection, any more than absolutely necessary, as such movements become nothing but forced loans. * * * "

A second letter calling the attention of the Stanton Bank to the fact that it had drawn against the gross balance, and thus created an overdraft on its available funds, was written by the Banking Corporation on May 6, 1921; notice was given.

of the amount of interest charged on the amount thus borrowed, and the letter closed with the statement: "We would be pleased to handle your account in the old way, but you realize that if more than one or two should handle their account as you have done in the past, it would work a considerable hardship upon us—therefore we must ask that you handle your account as Mr. Ramsey has requested."

A third letter of like import was written by the Banking Corporation on September 2, 1921.

Again, on October 25, 1921, the Banking Corporation called the attention of the Stanton Bank to its transgression of the rules laid down for the handling of its account with the Banking Corporation, and in this letter it is stated: "You will observe further that on October 13 the amount reached $37,500 of our money which you were using because drawing against uncollected funds. * * * We have charged your account $109.35, covering interest on these overdrafts, for the month," *etc.*

The last of the series of letters written on the subject is dated May 25, 1922, which letter closes with the statement: "We dislike very much to be compelled to charge you interest and would suggest that, if convenient, you carry a net available balance with us as much as possible."

The items making up the total here claimed by the Stanton Bank were included in cash letters, with other items, on April 27, 28, and 30, 1923, and were sent by the Banking Corporation to the Federal Reserve branch bank in Helena in the usual manner on April 30, and May 1; each item being identified on the remittance slip by the Stanton Bank's American Banking Association No. 93—345, and collected by the Federal Bank on May 2 and 3. The Stanton Bank made immediate claim upon the Federal Reserve Bank for the full amount so collected, as money belonging to the Stanton Bank, and furnished the Federal Bank with a full list of the items claimed, which items checked with the annotations on the remittance letter of the Banking Corporation.

Later, on settlement between the Federal Reserve Bank and the receiver, the Federal Reserve Bank paid to the receiver the amount due the Banking Corporation from the Federal Reserve Bank less the amount of $8,574.88, so claimed by the Stanton Bank, and refused to pay the amount over to the receiver, which action resulted in the original suit by the receiver and the substitution of the Stanton Bank as defendant.

In its complaint in intervention the Stanton Bank alleged: "That for a long period of time prior, to-wit, more than six months prior, to said second day of May, 1923, an agreement and understanding existed and at all said times was in full force and effect between the Banking Corporation and the Stanton Bank, that no checks, drafts, or other items sent by the Stanton Bank to the Banking Corporation should be drawn against the Stanton Bank, or should be available credit to it until such checks, drafts, and other items were in fact collected and received by the Banking Corporation, which agreement applied to and covered all said checks, drafts, and items referred to herein, notwithstanding any indorsement appearing upon the same. * * * "

The burden of proving such allegation was, of course, upon the Stanton Bank, and it sought to maintain the same by a showing consisting of the introduction of certain letters written by the executive officers of the Banking Corporation to the Stanton Bank, supplemented by oral testimony. The court sustained an objection to such proof, and thereupon the Stanton Bank made the following offer: "Counsel for the Stanton Trust & Savings Bank at this time offer to prove by the witness S. J. Doyle, on the stand, that from the time the Banking Corporation became the Helena correspondent of the Stanton Bank, until the closing of the Banking Corporation, the practical understanding and agreement between the two banks was this: That no item or items remitted by the Stanton Bank to the Banking Corporation constituted available funds, or could be checked against or used by the Stanton Bank until all such items were in fact collected and received by the Banking Corporation; that the Banking Corporation,

pursuant to this understanding, was, in fact, the agent of the Stanton Bank for the collection of all such items until they were actually received by the Banking Corporation and credited to the Stanton Bank; that until such items were paid and the money received by the Banking Corporation, the same constituted no actual credit or privilege to the Stanton Bank to in any manner draw upon such items. * * * '' As a part of the offer, counsel offered the letters from the Banking Corporation to the Stanton Bank.

The court sustained an objection to the introduction of oral testimony and to the offer of proof in so far as it tendered proof by oral testimony, but admitted the letters in evidence. While the letters were admitted, the trial court intimated that its theory of the case was that any secret agreement or understanding between the two banks, while probably binding as to them in an action between them originally, was not binding upon the creditors appearing in this proceeding for the adjudication of their claims against the Banking Corporation, and that, therefore, in this proceeding, the books required by law to be kept by the two institutions, and to which the bank examiner had access, should constitute the entire contract so far as this proceeding is concerned.

No error is predicated upon the ruling of the court as above indicated, and, therefore, if proof of the allegations of the complaint in intervention has been sufficiently made, it must be found in the letters so admitted and in such oral testimony relating to them as was admitted, and reference to the offer of proof and attempted proof is included in this opinion only as indicating the theory upon which the trial court, in all probability, reached the conclusion upon which it made its final order herein.

1. The first contention made is that because the original [1] action was consolidated with the receivership action to compel all creditors claiming a preference to litigate their rights, the rules which would govern in an action between the Banking Corporation and the Stanton Bank have no application, and that, in some manner, by the method pursued the

Stanton Bank is barred from asserting defenses which would
be available in an original action between the two banks,
and therefore the letters referred to should not be considered.
There can be no merit in this contention.  The proceeding, no
matter how tried, is essentially an action between the receiver
of the defunct bank and the Stanton Bank, to determine the
ownership of the funds in controversy; it was consolidated with
other matters merely for convenience, and by such consolidation
the Stanton Bank lost none of its substantive rights.  The re-
ceiver is an officer of the court, charged with the duty of assem-
bling, conserving and distributing the assets of the insolvent to
its creditors, under the order of the court, and can occupy no
higher position with reference to those indebted to the bank,
or those to whom it was indebted, than did the bank before
his appointment.  (*Williams* v. *Johnson,* 50 Mont. 7, Ann. Cas.
1916D, 595, 144 Pac. 768; *People* v. *California Safe Dep. &
Tr. Co.,* 168 Cal. 241, L. R. A. 1915A, 299, 141 Pac. 1181;
1 Michie on Banks and Banking, p. 542, sec. 7763.)

Moneys to which the bank, at the time it closed its doors
as an insolvent, had no title cannot be retained, therefore,
by the receiver, as moneys belonging to the bank or the
creditors, since neither the receiver nor the creditors have
any interest therein, and the Stanton Bank had the right to
make any defense to the receiver's action that it might have
interposed in an action between it and the Banking Corpora-
tion as a going concern.  The letters of the Banking Corpora-
tion were, therefore, properly received in evidence and may
be considered for the purpose of determining the relations
existing between the Banking Corporation and the Stanton
Bank thereafter, and, consequently, in determining the rights
of the latter institution as against the receiver of the former.

2. Up to April 25, 1921, while, as neither the word "collec-
[2]   tion" nor the word "credit" was stricken from the cash
letters by which remittances were made, the items inclosed
were sent for collection and credit, unquestionably the remit-
tances were treated as cash and accepted for credit and credit

extended; interest was figured on the "gross balance" and the Stanton Bank was immediately authorized to draw upon such balance. Under these circumstances, up to the date above mentioned, title to the items sent each day passed immediately to the Banking Corporation, and from each of such transactions the relation of debtor and creditor arose. (*In re Williams' Estate,* 55 Mont. 63, 1 A. L. R. 1639, 173 Pac. 790; *Stankey* v. *Citizens' Nat. Bank,* 64 Mont. 309, 209 Pac. 1054; *Fayette Nat. Bank* v. *Summers,* 105 Va. 689, 7 L. R. A. (n. s.) 694, 54 S. E. 862; *Gate City Bldg. & L. Assn.* v. *National Bank of Commerce,* 126 Mo. 82, 47 Am. St. Rep. 633, 27 L. R. A. 401, 28 S. W. 633.)

3. It is true that after the receipt of the letters from the [3] Banking Corporation the Stanton Bank continued to remit its checks and drafts in the same manner as formerly, and that each thereof carried an unrestricted indorsement, and that by the custom of banking and "*prima facie,* according to the weight of authority," under the law this would pass the title to the paper to the receiving bank. (3 R. C. L., sec. 152, p. 524; *Burton* v. *United States,* 196 U. S. 283, 49 L. Ed. 482, 25 Sup. Ct. Rep. 243; *Metropolitan Nat. Bank* v. *Merchants' Nat. Bank,* 182 Ill. 367, 74 Am. St. Rep. 157, 55 N. E. 360; *Noble* v. *Doughten,* 72 Kan. 336, 3 L. R. A. (n. s.) 1167, 83 Pac. 1048; *In re State Bank,* 56 Minn. 119, 45 Am. St. Rep. 454, 57 N. W. 336; *Aebi* v. *Bank of Evansville,* 124 Wis. 73, 109 Am. St. Rep. 925, 68 L. R. A. 964, 102 N. W. 329; 2 Michie on Banks and Banking, p. 888.) But this rule is not absolute; it is merely *prima facie,* and yields to the intention of the parties, expressed or implied from the circumstances. (3 R. C. L. 525; *In re State Bank, supra.*) "The usual course of business is immaterial, where there is an express contract between the parties" (*Fay* v. *Strawn,* 32 Ill. 295), and title to the paper does not necessarily pass by an unrestricted indorsement (*Richardson* v. *New Orleans Coffee Co.,* 102 Fed. 785, 43 C. C. A. 583; *Claflin* v. *Wilson,* 51 Iowa, 15, 50 N. W. 578; *Prescott* v. *Leonard,* 32 Kan. 142, 4 Pac. 172; *Morris-Miller Co.* v. *Von Pressentin,* 63 Wash. 74,

114 Pac. 912). The question of passing title is one of fact rather than law (*St. Louis R. Co.* v. *Johnston,* 133 U. S. 566, 33 L. Ed. 683, 10 Sup. Ct. Rep. 390 [see, also, Rose's U. S. Notes]), and the controlling factor in determining whether title passes is found in the intention of the parties (3 R. C. L. 633). The "controlling factor" may be shown in different ways. The author of the subject in Ruling Case Law says: "It would seem that the right accorded the depositor to draw upon funds is especially material as showing an intention that title should pass to the bank." (3 R. C. L. 525; 86 Am. St. Rep. 784, note; 7 L. R. A. (n. s.) 695, note.) Con-[4] versely, it would seem that a showing that the right to draw upon the funds before collection was denied the depositor is persuasive evidence that no such intention existed.

4. We must, then, look to the declarations of the parties and the facts and circumstances surrounding the transactions between the two banks, as evidencing the intention of the parties, in order to determine whether, in the case at bar, title to the checks and drafts in question passed to the bank.

We find that on becoming a member of the Federal Reserve [5] Bank system, the Banking Corporation was forced to adopt a new routine in handling paper sent to it; it could no longer secure immediate credit on items which it forwarded, and therefore notified the Stanton Bank that it could no longer accept items on outside banks "as cash," but could only receive them for collection and credit, the credit to be extended only on full and final collection of the items. Its officers explained in no uncertain terms that when the Stanton Bank drew against any part of the "gross balance" over and above actual "available funds," "such movement becomes nothing but forced loans," and was a use of the money of the Banking Corporation and not the use of any credit extended because of remittances made. Interest was thereafter figured on daily balances only when the daily balance of items already collected and credited to the Stanton Bank showed a credit balance to it, no matter what the ledger account showed as a "gross balance," and the cashier of the Stanton Bank

testified that that bank acquiesced in the change so made. While the ledger account showed the entry of all items, on receipt thereof, it is clear that an accurate account of remittances and collections was kept by the Banking Corporation, and a transfer from the "gross balance column" was made to the credit account of the Stanton Bank as the items received for collection were in fact collected, as shown by the "office interest calculation" sent to the Stanton Bank with the request to return it. Interest was charged on overdrafts as "forced loans." But even in the absence of such a showing, the Stanton Bank was not bound by an entry of credit in the books of the Banking Corporation, if, in fact, the intention of both parties was that such credit should not then be extended. (*State ex rel. Kelly* v. *Farmers' State Bank,* 54 Mont. 515, 172 Pac. 130.)

Under the arrangement forced upon the Stanton Bank by the Banking Corporation, to which the former must perforce agree, the items in question were remitted and received for collection and credit, the credit to be extended only upon collection of the items, as truly as though the remittance had been made with the express direction that those items were sent for collection and, when collected, the proceeds should be passed to the credit of the depositor. Where such an arrangement is made, or direction given, the relation created is not that of debtor and creditor, but of principal and agent, and this relation is changed to that of debtor and creditor only upon the passing of credit after collection, as authorized (*State ex rel. Kelly* v. *Farmers' State Bank,* above; *Guignon* v. *First Nat. Bank,* 22 Mont. 140, 55 Pac. 1051, 1097; *Commercial Bank of Pennsylvania* v. *Armstrong,* 148 U. S. 50, 37 L. Ed. 363, 13 Sup. Ct. Rep. 533; *Importers' Nat. Bank* v. *Peters,* 123 N. Y. 272, 25 N. E. 319; 3 R. C. L. 632, 633; 7 C. J., sec. 327, p. 642), and title to the paper remains in the depositor until the credit is extended, when it passes to the bank. It would seem, then, that the letters admitted in evidence contained proof of the allegations of the complaint in intervention and all of that was properly included within

the offer of proof, except that the letters show the condition as existing only up to and including May 25, 1922, or nearly a year prior to the date of the remittances in question here.

However, we think that these letters show that, upon entry into the Federal Reserve Bank system, a change in the method of handling the remittances from correspondent banks by the Banking Corporation became imperative, and therefore. the new system, based upon that of the Federal Reserve branch bank, was imposed upon the Stanton Bank; that the evidence further shows that on the last day it was open for business, the items received from the Stanton Bank were forwarded by the Banking Corporation to the Federal Reserve branch bank at Helena, and that no change had been made by the Banking Corporation in its relations with the Federal Reserve Bank—in fact, it is admitted that, at the time, the Banking Corporation was still a member .of the Federal Reserve Bank system. It would seem, therefore, that, the conditions necessitating the existence of the new system having been shown to have continued, proof that the method contended for did exist will be presumed to continue to exist so long as no change had taken place, under the presumption that "a thing once proved to exist continues as long as is usual with things of that nature," which presumption constitutes satisfactory proof, if uncontradicted. (Sec. 10606, subd. 32, Rev. Codes 1921.) If the imposition of the new method upon the Stanton Bank was necessary by reason of the con·nection made by the Banking Corporation with the Federal Reserve Bank, then the phrase "as long as is usual with things of that nature" would, in this connection, mean so long as that. necessity continued.

Here the proceeds of the collections never reached the Banking Corporation, and before the collections were made by its subagent for collection, the Banking Corporation closed its doors as an insolvent. Under these circumstances, no change from the relationship of principal and agent was effected, and title to the paper remained in the Stanton Bank (*St. Louis & S. F. Ry. Co.* v. *Johnston,* 133 U. S. 566, 33

[74 Mont. 491.]

L. Ed. 683, 10 Sup. Ct. Rep. 390; *Manufacturers' Bank* v. *Continental Bank,* 138 Mass. 553, 12 Am. St. Rep. 598, 2 L. R. A. 699, 20 N. E. 193; *North Carolina Bank* v. *Merchants & Farmers' Bank,* 137 N. C. 697, 50 S. E. 308; 2 Michie on Banks and Banking, sec. 166, p. 1417), and the Stanton Bank could follow and recover its paper or the proceeds thereof, so long as it could identify the same. This it did, and under the showing made the Stanton Bank was entitled to an order directing the receiver to turn the proceeds so held, awaiting final determination, over to it. It follows that the order appealed from was erroneous.

5. The Stanton Bank asserts that it is entitled to interest [6] on the principal sum from and after May 15, 1923. It is contended by the receiver that the case of *Guignon* v. *First National Bank,* above, denies the right to recover interest from him. That case involved the proceeds of a draft deposited for collection only; the amount was collected but not paid to the depositor at the time the bank failed. On the question of interest on the amount withheld, this court said: ''The court below rendered judgment for the full amount of the sum collected, but allowed no interest. This we think correct. We have no statutory provision, strictly applicable to such cases, and we think it inequitable that the assets in the hands of the receiver to which the general creditors must resort should be taken to pay interest on the sum so withheld by the receiver until he could be advised as to his duty in the premises. The discretion of the lower court was wisely exercised in this particular, and we shall not interfere.'' After the opinion was handed down, the court suggested that it was not fully satisfied as to the conclusion reached touching the question of interest, and of its own motion suggested an application for a rehearing. However, a settlement had been effected, no rehearing was had, and the opinion stands as originally delivered.

The Stanton Bank suggests that the lack of statutory provision applicable to such a case, commented upon by the court, has been cured by the enactment of that part of section

7725, Revised Codes of 1921, which provides for interest "on moneys received to the use of another and detained from him." It can hardly be maintained here that the moneys in controversy were received by the receiver to the use of the Stanton Bank and detained by him from that institution. The receiver, under an honest belief that the proceeds from the collections sent to the Federal Reserve Bank, and shown by the ledger account of the Banking Corporation to have been credited to the Stanton Bank, at the time of the receipt of the items so sent, constituted a part of the assets of the defunct institution, sought to recover that sum for distribution to the creditors. The amount was paid to him only after suit was commenced and an order made by the court directing its payment to him, and then only for deposit in a special fund to await the outcome of the action. Held in a special fund, the money was as though paid into court by the Federal Reserve Bank in an interpleader action, in which the two claimants were required to come into court and litigate their rights thereto under the provisions of section 9087, Revised Codes of 1921; this, in effect, is what was done in this case. It would be no more equitable to require the receiver, as the holder of the money under the order of the court, to pay interest thereon to the adverse claimant, than it would be to require the clerk of the court to pay interest to the successful litigant on funds actually paid into court.

These facts make out a stronger case for the exercise of discretion in denying a recovery of interest than is found in the *Guignon Case,* above, and if the soundness of the ruling as to interest found in that opinion is questionable, the same cannot be said as to the application of the statement of the court in that case to the facts before us; here "it would be inequitable that the assets in the hands of the receiver to which the general creditors must resort should be taken to pay interest * * * " on a sum impounded by the court to await the final determination of the question presented to it. The Stanton Bank should not recover interest.

The order appealed from is reversed, and the cause remanded to the district court of Lewis and Clark county, with direction to make and enter herein an order directing the receiver to pay over to the Stanton Bank, or its representatives, the sum of $8,574.88 so held on special deposit.

*Reversed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, GALEN and STARK, concur.

Rehearing denied December 9, 1925.